593 A.2d 890

**Francine NORMANN, Executrix of the Estate
of James Normann, Deceased**

v.

**JOHNS–MANVILLE CORP.; Pacor, Inc.; Eagle Picher Industries; Unarco Industries, Inc.; Keene Corporation; Raybestos–Manhattan, Inc.; Celotex Corporation; Southern Textile Company; J.P. Stevens Company; Garlock, Inc.; Owens–Illinois Glass Company; Fibreboard Corporation; and GAF Corporation.**

**Appeal of OWENS–ILLINOIS GLASS COMPANY.**

Superior Court of Pennsylvania.

Argued April 3, 1991.

Filed July 1, 1991.

David A. Cohen, New Jersey, for appellant.

Steven J. Cooperstein, Philadelphia, for Francine Normann, appellee.

Before WIEAND, OLSZEWSKI and BROSKY, JJ.

OLSZEWSKI, Judge:

This is an appeal from a judgment entered in the Court of Common Pleas of Philadelphia County following its order denying appellant's (hereinafter Owens–Illinois) post-trial motion requesting a new trial.[1] The issues presented on this appeal are: (1) whether the trial court erred, as a matter of law, in determining that Pennsylvania substantive law would apply to the liability determination of this products liability case and; (2) whether the choice of law issue was properly preserved for appellate review. We hold that such issue is properly before us and that the trial court erred in determining that Pennsylvania law controls the liability determination with respect to Owens–Illinois.

The facts from which this appeal arose are as follows: Decedent, James Normann, a then-resident of New York, was employed as a coppersmith and mechanical engineer at a Navy shipyard in Brooklyn, New York, from 1941 until 1965, when the shipyard was closed.[2] (Deposition of James Normann, August 25, 1983, at p. 10; N.T. at 27.) In 1965, decedent was transferred to the Philadelphia Naval Shipyard in Pennsylvania and continued in its employ until his retirement in 1976. (Normann dep. at 9–11.) During this period, and until his death in 1984, decedent was a resident and citizen of New Jersey. The record indicates that decedent was exposed to asbestos-containing products during both his employment in New York and Pennsylvania. (Normann dep. at 19–24.) Most critical to our determination, however, is the fact that Owens–Illinois ceased the manufacture of asbestos-containing products in 1958, when it sold its entire thermal insulation business. (*See* affidavit of Arthur H. Smith, Assistant Secretary of Owens–Illinois,

1. The record indicates that the trial court order denying Owens–Illinois' post-trial motions was dated August 13, 1990; however, entry of judgment, as required by Pa.R.App.P. 301, was not made until January 15, 1990, following appellant's praecipe to the trial court for entry of the judgment.

2. The record indicates that the decedent's employment in the shipyard was interrupted by military service from 1941–1943; however, such period of non-employment at the shipyard is inconsequential to the present appeal.

Inc. [formerly known as Owens–Illinois Glass Company].)
Accordingly, as the decedent was not employed in Pennsyl-
vania until 1965, he was not exposed to asbestos-containing
products manufactured by Owens–Illinois in Pennsylvania,
such exposure being limited to portions of the time he
worked in New York.

In 1982, decedent was diagnosed as suffering from meso-
thelioma, a cancer believed to be caused by asbestos expo-
sure. Decedent succumbed to the cancer in 1984. Appel-
lee, Francine Normann, executrix of the Estate of James
Normann, sought compensatory damages for decedent's
asbestos-related injuries and damages for her own loss of
consortium from various asbestos manufacturers, including
Owens–Illinois. A reverse bifurcated trial resulted in a jury
award for appellee in the amount of $1,000,000 compensato-
ry damages and $500,000 for loss of consortium. Prior to
the liability stage of the trial, Owens–Illinois remained the
sole, unsettled, solvent defendant. After the trial judge
declared that Pennsylvania law would be applied to the
liability phase of the trial, Owens–Illinois and appellee stipu-
lated, with court approval, that it would assume a one-tenth
share of the total verdict, without prejudice to its rights to
file post-trial motions or its appellate rights. (Trial tran-
script at 3–5.) In its post-trial motions, Owens–Illinois
argued, *inter alia,* for the application of New York law to
the present case. The trial judge held that Owens–Illinois
had waived the choice of law issue by electing to stipulate
to its own liability and denied Owens–Illinois' motion for a
new trial. Owens–Illinois then filed the instant appeal.

■ Before deciding whether the trial court erred in
determining that Pennsylvania law would control the liabili-
ty issue herein, we must first ascertain whether appellant
has properly preserved this issue for appellate review. We
believe the issue is properly before us. In announcing the
stipulation between the parties in open court, the trial judge
stated the following:

THE COURT: I am pleased to announce that we have
reached an accord and satisfaction in this case. Prior to

coming to court today evidently Fibreboard and Celotex made arrangements with the Plaintiff and, therefore, they are not here and that left only Owens–Illinois involved in the case and we have just made an agreement among counsel that Owens–Illinois will agree to—for the purposes of appeal, a one-tenth percentage of liability and they will have the right to appeal on the first portion of the case, also on the issue of the application of New York law because if this case had gone into liability I made up my mind to apply Pennsylvania law. . . .

The issue of whether New York law applied I made up my mind, and with respect to your clients I give them that issue to raise on post-verdict motions.

Trial transcript at 3–4.

Upon review of this above explanation of the stipulation between the parties, it is abundantly clear that the stipulation was conditioned on the preservation of Owens–Illinois' appellate rights as to the choice-of-law determination. As Owens–Illinois properly raised the choice-of-law issue in its post-trial motions, the present appeal with respect to such issue is rightly before this Court. *See* Pa.R.App.P. 302(a).

Before turning to a choice-of-law discussion and the competing interests and contacts of Pennsylvania and New York with respect to the present case, a brief dissertation of the differing laws of each state is in order at this juncture. In Pennsylvania, our Supreme Court has rejected application of the state-of-the-art defense in strict liability suits. *Carrecter v. Colson Equipment Co.*, 346 Pa.Super. 95, 499 A.2d 326 (1985). The rationale is that such a defense would inject negligence principles into a strict liability case. Negligence is not an element of the plaintiff's case, nor is the absence thereof an available defense. Therefore, such a defense has not been permitted in a products liability action in Pennsylvania. By contrast, New York permits a products liability defendant to assert the state-of-the-art defense. *Voss v. Black & Decker Manufacturing Co.*, 59 N.Y.2d 102, 463 N.Y.S.2d 398, 450 N.E.2d 204 (1983).

We must now decide the choice-of-law question, implementing Pennsylvania choice-of-law rules. Pennsylvania courts have abandoned the rule of *lex loci delicti* in favor of a less restrictive approach combining the methodologies of a "government interest analysis" and the "significant relationship" approach of the Restatement (Second) of Conflicts § 145 (1971). *Giovanetti v. Johns–Manville Corp.*, 372 Pa.Super. 431, 539 A.2d 871, 872 (1988), *citing, Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964) ("... [T]he strict lex loci delicti rule should be abandoned in Pennsylvania in favor of a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court.").

In determining which state has the greater interest in having its own law apply to a particular cause of action, courts should not merely count the contacts that each state has with the action, but should consider each state's contacts qualitatively rather than quantitatively. *See Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854 (1970). What should be sought is an analysis of the extent to which one state rather than another has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law. *McSwain v. McSwain*, 420 Pa. 86, 94, 215 A.2d 677, 682 (1966).

In *Giovanetti v. Johns–Manville Corp., supra*, the plaintiff, a New Jersey resident, brought action against various manufacturers and distributors of asbestos products for injuries resulting from exposure to asbestos during the course of his employment. The facts indicated that the plaintiff had spent twenty-seven years working in New Jersey, as opposed to only two years in Pennsylvania. As six of the defendants were Pennsylvania based corporations, the Court recognized Pennsylvania's legitimate interest in ensuring that Pennsylvania companies do not manufacture or distribute hazardous products which cause injury. The Court, however, believed that Pennsylvania's interest was eclipsed by the numerous contacts between New

Jersey and the cause of action, noting the vast discrepancy in the length of time plaintiff was exposed to asbestos products in each state and the fact that all of the defendant's engaged in business in New Jersey. Therefore, the Court held that New Jersey's interest in seeing its citizens compensated for injuries occurring within its borders was greater than Pennsylvania's interest in discouraging the manufacture and distribution of asbestos products in Pennsylvania, where the cause of action arose out of injury occurring primarily in the state of New Jersey. *Id.*, 372 Pa.Superior Ct. at 436–437, 539 A.2d at 873.

■ Upon reviewing the relationship of Pennsylvania and New York to the case *sub judice,* and each state's respective interest in having its own law apply, we believe New York's law controls the present case.[3] The record indicates that decedent, a then-resident of New York, was employed in New York between 1941 and 1965 and alleges exposure to Owens–Illinois' asbestos products between 1948 and 1958. While employed in Pennsylvania from 1965 to 1976, decedent was not exposed to any Owens–Illinois product, as Owens–Illinois ceased the manufacture, sale, and distribution of asbestos-products in 1958.[4] Therefore, appellant's argument that the exposure to its own products took place entirely within the state of New York is meritorious and worthy of great weight in the choice-of-law analysis. Additionally, as appellant correctly points out, the relationship between decedent and appellant was centered in New York,

**3.** We find it unnecessary to analyze New Jersey's interest in having its law apply, or ascertaining the state of New Jersey law with respect to the state-of-the-art defense to strict products liability actions, as New Jersey's only contact to this case is the fact that the decedent was a resident of New Jersey while employed in Pennsylvania, where he was not even exposed to any of Owens–Illinois' products.

**4.** While decedent was exposed to asbestos-containing products manufactured by other companies while employed in Pennsylvania, those companies are no longer parties to the present action and we perceive no reason why this exposure should be a continuing contact between Pennsylvania and the present case, for choice-of-law purposes. *See Kelly v. Johns–Manville Corp.,* 590 F.Supp. 1089 (E.D.Pa.1984) (In multi-defendant asbestos case, plaintiff's claims against each defendant is severable for choice-of-law purposes.).

for the reason that decedent was exposed to appellant's products only in New York. Finally, decedent was a resident of New York at the time he was exposed to the Owens–Illinois asbestos products.

■ With regard to Pennsylvania's relationship to the present case, its contacts are scarce. First, Pennsylvania is the forum in which the present action has been brought; hence, if an interest in the action is established, this is but one factor to be considered in the analysis. Restatement (Second) of Conflicts § 6 (1971). The only other contact that Pennsylvania has to the present case is the fact that decedent was employed in Pennsylvania following his exposure to appellant's asbestos products in New York. While employed in Pennsylvania, decedent was again exposed to asbestos products, none of which, however, were manufactured by appellant Owens–Illinois.[5] The evidence, however, is inconclusive as to whether decedent's exposure to asbestos products in Pennsylvania contributed to the illness from which he suffered. Nonetheless, it is clear, for purposes of the present appeal, that decedent was only exposed to asbestos products manufactured by Owens–Illinois while in New York. With respect to the present case where Owens–Illinois remains the sole defendant, the only contact that Pennsylvania has is by virtue of being the forum state. As stated, Pennsylvania does not permit a products liability defendant the use of the state-of-the-art defense. This denial of the defense is to further our policy of refusing to inject negligence principles into a strict liability action.

5. We are not willing to reach as far as appellant in its assertion that decedent's exposure to asbestos products in Pennsylvania did not contribute to his illness. Appellant supports this argument by evidence, from expert testimony, that the latency period for mesothelioma is 20 years. As decedent was diagnosed with mesothelioma in 1982, appellant alleges that only pre–1962 exposure could have contributed to his illness, which would have occurred in New York. In his deposition testimony, however, the medical expert admits that a variety of opinion exists as to the latency period for such disease. (*See* deposition of Dr. Epstein at 45.) Therefore, we are unable to accept the twenty-year latency period as conclusive evidence that decedent's illness was not caused, in part, by his exposure to asbestos products in Pennsylvania.

Underlying this basic policy, however, is a policy of compensating our citizens for injuries resulting from defective products and discouraging the manufacture and distribution of such products within Pennsylvania. In the present case, however, such interests are not implicated, as the decedent was not a citizen or resident of Pennsylvania during the course of his employment in either New York or Pennsylvania. Decedent was not even exposed to any asbestos products in Pennsylvania which were manufactured by Owens–Illinois. Therefore, applying Pennsylvania law to the instant case would not further any of Pennsylvania's policies with respect to products liability cases.

To the contrary, New York has by far a greater interest in having its law apply. It is the location where decedent was exposed to Owens–Illinois' asbestos products; it is the place where the relationship between decedent and Owens–Illinois was centered and was the residence of decedent during the years that he was employed in New York. By virtue of its law permitting strict products liability defendants to assert a state-of-the-art defense, New York has a policy of according fairness to manufacturers who, due to technological limitations at the time of the injury, are prevented from making a certain product safer. We believe that this policy of protecting manufacturers who act in accordance with the industry standards of the time extends to Owens–Illinois herein, as Owens–Illinois, although an Ohio corporation, conducted its business in New York and, as a result, decedent was exposed to its products.

Accordingly, in the interests of comity and respect for New York's extensive and somewhat exclusive relationship to the present case, we hold that the trial court committed error in refusing to apply New York law. Hence, we reverse and remand for trial on the issue of liability under New York law.

Reversed and remanded. Jurisdiction relinquished.

WIEAND, J., files a concurring statement.

**WIEAND, Judge, concurring:**

I join the careful analysis of the majority. I write separately to express the hope, perhaps in vain, that Pennsylvania will yet join the "mainstream" in strict liability, design defect cases. When that happens, even Pennsylvania manufacturers will be liable for a "design defect" only if they knew or should have known that the design of their product was unreasonably dangerous.