## Colyer v. National Grange Mutual Insurance Company

C.P. of Centre County, no. 2000-0527.

*James K. Thomas II* and *Brooks R. Foland,* for plaintiffs.

*John W. Heslop Jr.* and *R. Bruce Morrison,* for defendants.

GRINE, *J.,* May 4, 2001—Presently before the court for consideration are the consolidated motions for posttrial relief pursuant to Pa.R.C.P. 227.1 filed by defendant National Grange Mutual Insurance Company.

## PROCEDURAL BACKGROUND

Plaintiffs initiated the instant matter by the filing of a complaint on March 8, 2000. On May 1, 2000, an affidavit of service was filed and a default judgment was en-

tered against defendant National Grange Mutual Insurance Company. Subsequently, on August 14, 2000, this court held a hearing for the sole purpose of determining the award of damages. In an opinion and order entered on November 15, 2000, this court entered a decision in favor of plaintiff in the amount of $3,685,008 against NGM.[1]

On November 22, 2000, plaintiff Ralph Martin Colyer waived his entitlement to attorney's fees and costs incurred relevant to the instant matter. Thereafter, on November 27, 2000, NGM filed the consolidated motions for post-trial relief presently before this court for consideration. Oral argument was held on April 2, 2001. As both parties have submitted briefs, this matter is now ripe for disposition.

## FACTUAL BACKGROUND

The factual background of the instant matter is clearly set forth in this court's opinion and order dated November 15, 2000. The instant matter involves a bad faith ac-

---

1. In its brief, NGM noted that two aspects of this court's November 15, 2000 order required brief explanatory comments. The first deals with this court's entering of "judgment" as opposed to "verdict." The Pennsylvania Rules of Civil Procedure provide that where a judge sits without a jury, the trial court renders a *decision,* not a *verdict.* See Pa.R.C.P. 227.4(1)(a) and (b) and 1038(b) and (c) (which make clear the distinction between decisions and verdicts: verdicts are rendered by a jury, whereas decisions are made by a trial judge). Furthermore, the term " 'judgment' necessarily includes the terms 'verdict' or 'decision of the trial court,' since a judgment is nothing more than the official entry of a verdict or decision or the trial judge upon the docket. See *e.g.,* Pa.R.C.P. 227.1, 227.4(1)(b), and 1038, 42 Pa.C.S." *Sands v. Andino,* 404 Pa. Super. 238, 246, 590 A.2d 761, 764 (1991).

tion pursuant to 42 Pa.C.S. §8371. Plaintiff instituted the instant action and alleged NGM breached its respective contract of insurance and engaged in bad faith by failing and/or refusing to defend plaintiff in the underlying action.

## DISCUSSION

NGM's consolidated motions for post-trial relief contain four underlying motions: I—motion for judgment n.o.v.; II—motion for new trial; III—motion for remittitur; and IV—motion for leave to supplement. In its post-trial motions, NGM has raised a cornucopia of issues upon which NGM asserts it is entitled to relief. However, as NGM failed to brief or argue a number of these issues in post-trial proceedings, they are considered waived. See *Kraus v. Taylor,* 710 A.2d 1142, 1146 (Pa. Super. 1998) (issue raised in post-trial motion is waived unless it is briefed or argued in post-trial proceedings), *alloc. granted,* 556 Pa. 256, 727 A.2d 1109 (1999), *dismissed,* 560 Pa. 220, 743 A.2d 451 (2000).

The contentions set forth in NGM's consolidated motions for post-trial relief may be summarized as follows: (1) this court erred in applying Pennsylvania rather than Virginia law, (2) it is unconstitutional to apply 42 Pa.C.S. §8371 to the instant matter, and (3) this court erred in assessing punitive damages and interest.

A motion for judgment n.o.v. is available to "any party" pursuant to Pa.R.C.P. 227.1. *DeFazio v. Labe,* 518 Pa. 390, 402, 543 A.2d 540, 546 (1988). There are two bases upon which judgment n.o.v. can be entered: (1) movant is entitled to judgment as a matter of law, and/or (2) the

evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. *Simmons v. Pacor Inc.,* 543 Pa. 664, 674 A.2d 232 (1996). In reviewing a motion for judgment n.o.v., the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, with any conflict in evidence being resolved in his favor. *Surowiec v. General Motors Corp.,* 448 Pa. Super. 510, 672 A.2d 333 (1996).

A motion for new trial alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Hawkins,* 549 Pa. 352, 701 A.2d 492, 501 (1997), *U.S. cert. denied,* 523 U.S. 1083, 118 S.Ct. 1535, 140 L.Ed.2d 685. The finder of fact is free to believe all, part or none of the evidence and to determine the credibility of the witnesses. *Id.* at 701 A.2d at 501. The trial court will award a new trial only when the verdict is so contrary to the evidence so as to shock one's sense of justice. *Commonwealth v. Brown,* 538 Pa. 410, 439, 648 A.2d 1177, 1189 (1994).

To begin with, the thrust of NGM's argument at the April 2, 2000 oral argument was the averment that this court erred in applying Pennsylvania rather than Virginia law. NGM asserts the substantive law of the Commonwealth of Virginia governs all aspects of this case, including the available remedies for bad fath, and this court's decision is not in accordance with controlling Virginia law.

In support of its contention that NGM is properly raising the issue of choice of law at this point in the pro-

ceedings, NGM directs this court to the case of *Normann v. Johns-Manville Corp.,* 406 Pa. Super. 103, 593 A.2d 890 (1991), *alloc. denied,* 530 Pa. 645, 607 A.2d 255 (1992). In *Johns-Manville,* the trial court conducted a reverse bifurcated trial and the trial court declared Pennsylvania law would apply to the liability phase of the trial. *Id.* at 106, 593 A.2d at 892. The first issue before the Pennsylvania Superior Court on appeal was whether the issue of choice of law was properly preserved for appellate review. *Id.* The Pennsylvania Superior Court found that the choice of law issue was properly before it on the basis that a *stipulation the parties entered into was conditioned on the preservation of the appellate rights as to the choice of law issue determination. Id.*

Instantly, at no time prior to and/or during the hearing on damages did NGM raise the issue of choice of law determination. Up until the filing of NGM's filing of its post-trial motions, the parties took the position that Pennsylvania law applies.[2]

The Pennsylvania Rules of Civil Procedure provide that "[a] party waives all defenses and objections which are not presented either by preliminary objections, answer or reply, except a defense which is not required to be pleaded under Rule 1030(b), the defense of failure to state a claim upon which relief can be granted, the defense of failure to join an indispensable party, the objection of failure to state a legal defense to a claim and any

2. For example, NGM, in its proposed findings of fact and suggested conclusions of law affirmatively suggest that Pennsylvania law applies. See NGM proposed findings of fact and suggested conclusions of law, ¶¶6 and 8; see also, N.T., pp. 4 and 10-13.

other nonwaivable defense or objection." Pa.R.C.P. 1032. Additionally, the explanatory comment to the rule governing post-trial motions provides:

"Subdivision (b) states two requirements for the granting of post-trial relief. First, the grounds for the relief requested *must have been raised in pretrial proceedings or at trial* and, second, they must be stated in the motion. . . .

"A ground for a new trial or judgment notwithstanding the verdict *may not be raised for the first time in the motion for post-trial relief. It must be raised timely in pretrial proceedings or during the trial, thus affording the court the opportunity to correct the error.*" Pa.R.C.P. 227.1., explanatory comment—1983. (emphasis added)

As set forth above, a purpose of these rules is to afford the court the opportunity to correct any error. More important in the instant matter, however, is the fact that NGM, by failing to put this court and plaintiff on notice of the instant issue, deprived plaintiff of the opportunity to conduct appropriate discovery and present relevant evidence, and deprived this court of the opportunity to address the issue. Instead, NGM allowed default judgment to be entered against it, whereby the allegations set forth in plaintiff's complaint were deemed admitted by default, and now improperly attempts to raise issues like a Monday morning quarterback after the game has been decided. Consequently, this court determines NGM, by failing to raise the issue of choice of law determination prior to post-trial motions, has waived said issue.

Also, NGM asserts this court erred in assessing punitive damages and interest. To begin with, NGM argues the conduct in this case does not justify a punitive dam-

ages award of $3.35 million. This court cannot agree. While NGM has consistently stated the conduct was simply that of a senior claims representative "dropping the ball," this court fails to agree such was the case. To the contrary, as set forth in this court's opinion and order dated November 15, 2000, the conduct exhibited by NGM throughout the underlying proceeding established NGM, inter alia, breached its duty of good faith and fair dealing, elevated its own financial interests above its duties to its insured, consciously disregarded the advice from counsel it hired to render a coverage opinion, and provided incentives for bad faith behavior from NGM's handlers. Put simply, NGM "shopped" for a favorable coverage opinion, fired coverage counsel who rendered an unfavorable opinion, lied to the insured about the coverage, abandoned the insured without so much as a denial of coverage, and ignored the file for several years.

The degree of conduct exhibited by NGM is *exactly* the type of reprehensible conduct contemplated by Pennsylvania's Bad Faith Statute. This court was and is well aware that bad faith conduct must be proven by clear and convincing evidence. See *Terletsky v. Prudential Property and Casualty Insurance Co.,* 437 Pa. Super. 108, 125, 649 A.2d 680, 688 (1994), *alloc. denied,* 540 Pa. 641, 659 A.2d 560 (1995). Contrary to the vigorous assertions by NGM, this was not a simple case of a claims representative "dropping the ball," but, instead, was a case of an insurance company consciously neglecting to follow its own internal policies and leaving its insured "hanging out to dry." The evidence and testimony established *management* was aware that no coverage position had been taken and the insured had settled the underly-

ing case, yet *management's* only action was to close the file without payment or inquiry.

Next, NGM maintains this court was "working backwards" and erred in its computation of punitive damages. Contrary to NGM's reading of the November 15, 2000 opinion and order, this court did not first determine that using a multiplier of 10 times the compensatory damages was appropriate and "work[s] backwards."

Punitive damages in Pennsylvania are not intended as compensation to the injured plaintiff, but are a penalty, imposed to punish the defendant and to deter him and others from similar outrageous conduct. *Voltz v. General Motor Accceptance Corp.,* 332 Pa. 141, 2 A.2d 697 (1938); *Esmond v. Liscio,* 209 Pa. Super. 200, 224 A.2d 793 (1966), *alloc. denied.* The only limitation on the amount of punitive damages that can be awarded in Pennsylvania is that the award cannot be excessive. *BMW v. Gore,* 517 U.S. 559, 134 L.Ed.2d 809 (1996).

Unlike federal law, Pennsylvania does not require a proportionality between the amount of compensatory damages and the amount of punitive damages. *Kirkbride v. Lisbon Contractors Inc.,* 521 Pa. 97, 102, 555 A.2d 800, 802 (1989); *Sprague v. Walter,* 441 Pa. Super. 1, 656 A.2d 890 (1995), *alloc. denied,* 543 Pa. 695, 670 A.2d 142, 543 Pa. 730, 673 A.2d 336 (1996). In fact, a mathematical proportionality (under Pennsylvania law) would actually defeat the purpose of punitive damages— to punish tort-feasors or outrageous conduct and deter them from similar conduct. *Id.* Courts have upheld and endorsed a punitive damages award of $150,000 where the underlying underinsured motorist claim was only $15,000—a 10 to one ratio and the ratio of around 1 per-

cent of the defendant's net worth for a punitive damages award. *Wood v. Allstate,* 1997 U.S. District Lexis 14663 (E.D. Pa. 1997); *Dunn v. HOVIC,* 1 F.3d 1371, 1383 (3d Cir. 1993), *cert. denied,* 510 U.S. 1031 (1993).

Instantly, this court's award of punitive damages was approximately 1.25 percent of NGM's net worth as of December 31, 1999, a figure representing just over two months of investment income. As set forth in *Kirkbride, supra,* a mathematical proportionality would defeat the purpose of punitive damages. The United States Supreme Court, in the case of *BMW v. Gore, supra,* stated:

"Indeed, *low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages.* A higher ratio may also be justified in cases in which the inquiry is hard to detect or the monetary value of noneconomic harm might have been difficult to determine. It is appropriate, therefore, to reiterate our rejection of a categorical approach. Once again, we return to what we said . . . in *Haslip: 'We need not, and indeed we cannot draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case.* We can say, however, that [a] general concer[n] of reasonableness . . . properly enter[s] into the constitutional calculus.' In most cases, the ratio will be within a constitutionally acceptable range, and remittitur will not be justified on this basis. When the ratio is a breathtaking 500 to one, however, the award must surely 'raise a judicial eyebrow.' " *BMW, supra,* 134 L.Ed.2d at 831. (emphasis added)

This court's award of punitive damages, based on the actions of NGM, does not shock one's judicial conscience and is consistent with the guidelines set forth by the United States Supreme Court and Pennsylvania Supreme Court. This court reached its value of punitive damages after taking into careful consideration the character of NGM's actions, the nature and extent of the harm caused, and the wealth of NGM. This court determined the bad faith exhibited by NGM exceeded that set forth in other Pennsylvania case law and thereby warranted a punitive damages of just over 1.25 percent of NGM's net worth.[3]

Next, there is no dispute that section 8371 is silent as to how to calculate interest due and as to when the interest begins to run. An award of interest is permitted "on the amount of the claim from the date the claim was made." 42 Pa.C.S. §8371(1). NGM became aware of plaintiff Colyer's claim against Ebac as early as June 12, 1995. Plaintiff's complaint ¶23. As an insurer's duties and/or obligations under a policy are triggered once an insurer is placed on notice of a claim against its insured, this court began calculating interest on June 12, 1995. In deciding to apply compound as opposed to simple interest, this court took into the consideration, inter alia, the purpose of the statute and the fact that had the legislature solely intended the interest to be simple, it could have stated as much. This court, in applying its discretion, elected to use compound interest.[4]

---

3. NGM has a net worth of in excess of $265 million, liquid assets of approximately $320 million and earns approximately $17 million per year in investment income. N.T., pp. 70 and 72; see also, opinion and order, 11/15/2000, F.F. 51, 52 and 54.

4. As plaintiff correctly states in his brief, several Pennsylvania statutes permit the compounding of interest. See *e.g.,* 15 Pa.C.S. §2556

Finally, for the reasons set forth herein and in this court's opinion and order dated November 15, 2000, this court's verdict was not so contrary to the evidence so as to shock one's sense of justice. Accordingly, defendant NGM's consolidated motions for post-trial relief are denied. The court enters the following order:

## ORDER

And now, May 4, 2001, after oral argument and upon review of the briefs submitted by counsel, it is ordered and decreed that defendant National Grange Mutual Insurance Company's consolidated motions for post-trial relief are hereby denied.

It is further ordered that conclusion of law no. 15 of this court's opinion and order dated November 15, 2000, is amended to read as follows:

"(15) Plaintiff is entitled to punitive damages in an amount equivalent to approximately 1.25 percent of NGM's net worth, which is approximately 10 times the amount of the reimbursement for the underlying settlement and counsel fees incurred, and amount of interest pursuant to section 8371."

It is further ordered that all other aspects of this court's November 15, 2000 opinion and order are hereby affirmed.

(corporations); 24 Pa.C.S. §8102 (education); 27 Pa.C.S. §6106 (environmental resources); 71 Pa.C.S. §5907 (state government); 16 P.S. §11946 (counties); 32 P.S. §2020 (forests, waters and state parks); and 72 P.S. §3946.20 (taxation).