

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-25-1997

# Kaplan v. Exxon Corp

Precedential or Non-Precedential:

Docket
96-1495,96-1519

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation
"Kaplan v. Exxon Corp" (1997). *1997 Decisions.* Paper 230.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/230

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 25, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 96-1495 and 96-1519

AARON KAPLAN; JUDITH KAPLAN

v.

EXXON CORPORATION

v.

JAMES J. ANDERSON CONSTRUCTION CO., INC.;
JAMES D. MORRISSEY, INC.,
        Third Party Defendants

        Judith Kaplan and Aaron Kaplan,
        Appellants at No. 96-1495

        Exxon Corporation,
        Appellant at No. 96-1519

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 95-cv-01942)

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 2, 1997

Before: BECKER and SCIRICA, Circuit Judges
and SCHWARZER, District Judge*

(Filed September 25, 1997)

_____

*The Honorable William W Schwarzer, United States District Judge for
the Northern District of California, sitting by designation.

        RICHARD J. HELENIAK, ESQUIRE
        Cutler, Clemm & Morris
        527 Plymouth Road, Suite 416
        Plymouth Meeting, Pennsylvania
         19462

Attorney for Appellants/Cross-
Appellees,
Aaron Kaplan and Judith Kaplan

RICHARD E. STABINSKI, ESQUIRE
Phillips & Phelan
121 South Broad Street, Suite 1600
Philadelphia, Pennsylvania 19107

Attorney for Appellee/Cross-
Appellant,
Exxon Corporation

JOSEPH E. MAYK, ESQUIRE
Duane, Morris & Heckscher
735 Chesterbrook Boulevard, Suite
 300
Wayne, Pennsylvania 19087

Attorney for Appellee,
James J. Anderson Construction
Co., Inc.

MARY K. SCHWEMMER, ESQUIRE
White & Williams
One Liberty Place, Suite 1800
Philadelphia, Pennsylvania 19103

Attorney for Appellee,
James D. Morrissey, Inc.

OPINION OF THE COURT

SCIRICA, Circuit Judge.

In this slip and fall case alleging negligence for failing to clear snow and ice from a sidewalk, the district court

granted summary judgment to defendants, holding plaintiff assumed the risk of injury. Plaintiff appeals. We will reverse and remand.

I.

On March 13, 1993, Philadelphia was hit with a major snow storm. Levick Street in Northeast Philadelphia was plowed, creating mounds of snow along the border of the street and sidewalk that remained for days. On the morning

of March 22, 1993, plaintiff Judith Kaplan (age 30) and three others were waiting at a bus stop on the Levick Street sidewalk, near the intersection with Oxford Avenue, in order to catch SEPTA's route 26 bus. As the bus pulled up to its designated stop, a snow mound approximately three to four feet high stood between the passengers and the bus. It appears the snow mound began on the sidewalk and extended two or three feet into the street.

The passengers decided to climb the mound to board the bus. A 63 year old woman boarded with obvious difficulty, being helped by two men to traverse the slope. After the older woman successfully negotiated the snow mound, one of the men turned to warn Kaplan that the mound was "icy." Kaplan tried to climb the mound, but when she reached the top of the slope she slipped and fell and broke her tibia and fibula.

There was another route to the bus, although it was longer and involved walking in the street. The snow mound extended along the street, but there was a gap next to a fire hydrant located less than a block away. Much of the sidewalk was clear of snow and ice. Therefore, the snow mound could have been avoided by walking a distance along the sidewalk to the fire hydrant, entering Levick street at that point, and then walking back up the street to the bus.

Kaplan filed this personal injury suit in the Court of Common Pleas for Philadelphia County against defendant Exxon Corporation, which owns the property adjacent to the sidewalk where she fell. She alleges her injuries were caused by Exxon's negligent failure to keep the sidewalk free of ice and snow. Kaplan's husband also sued for loss

3

of consortium. Exxon removed the case to federal court and joined as third party defendants James J. Anderson Construction Co., Inc. and James D. Morrissey, Inc., allegedly the owners and operators of the snow plows that plowed Levick Street.

Exxon filed for summary judgment on two grounds: (i) that Kaplan assumed the risk of walking across the snow mound; and (ii) that Kaplan slipped on the street, not the sidewalk. The district court granted Exxon's motion on the first ground, finding Kaplan voluntarily confronted a known and obvious danger when she climbed the mound of ice and snow. The court denied Exxon's motion on the second

ground, finding an issue of fact on the location of the snow mound. The district court then granted summary judgment in favor of the third-party defendants "upon consideration of the[ir] Motion[s] for Summary Judgment . . . and, in light of this Court's Grant of Summary Judgment in favor of Exxon Corp."

II.

The district court had removal jurisdiction under 28 U.S.C. S 1441(a) based on diversity of the parties. We have jurisdiction under 28 U.S.C. S 1291. We review the district court's grant of summary judgment under a plenary standard. City of Erie, PA v. Guaranty Nat'l Ins. Co., 109 F.3d 156, 159 (3d Cir. 1997). We must apply the same test as the district court and affirm only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); City of Erie, PA, 109 F.3d at 159.

III.

A. Assumption of Risk

The district court held Kaplan assumed the risk of injury as a matter of law, because she voluntarily confronted a known and obvious danger when she climbed the snow mound. The district court held that under Pennsylvania law, "when `an invitee enters business premises, discovers

4

dangerous conditions which are both obvious and avoidable, and nevertheless proceeds voluntarily to encounter them' the landowner is under no duty to protect against those risks." Kaplan v. Exxon Corp., 926 F. Supp. 59, 61 (E.D. Pa. 1996) (quoting Carrender v. Fitterer, 469 A.2d 120, 125 (Pa. 1983)). Noting it was uncontroverted that Kaplan was told the mound was "icy" and that she had observed the older woman cross the mound with difficulty, the district court found the danger was "known and obvious." Kaplan, 926 F. Supp. at 62.

The district court also held Kaplan voluntarily confronted the danger because there was clear and level access to Levick Street by a fire hydrant halfway down the block where the snow mound had been cleared. Finding that Kaplan could have avoided climbing the snow mound, the court also found that her fear that she might miss the bus if she took the longer route did not justify her conduct.

Kaplan contends that under Pennsylvania law the issue
of assumption of risk is normally for the jury. She
maintains there are genuine issues of fact whether she
knew the snow mound was dangerous and whether her
actions were voluntary. Specifically, Kaplan contends she
did not know the mound was slippery. Despite the difficulty
the other woman encountered in climbing the snow mound,
Kaplan contends this does not necessarily demonstrate that
the mound was dangerous because the woman was elderly
and may have needed assistance because of her age.
Kaplan also notes that none of the other persons crossing
the mound had difficulty. Finally, Kaplan contends she did
not voluntarily confront the danger because she had no
safe alternative to crossing the snow mound -- even if she
had walked down the sidewalk to the gap by the fire
hydrant, she would have had to walk back to the bus on a
busy and icy street, in the traffic lane.

In response, Exxon argues that under Pennsylvania law,
the question of assumption of risk may be decided by the
court when reasonable minds could not differ on the
outcome. Exxon maintains the district court did not err
when it decided the assumption of risk issue because
Kaplan knew the mound was icy, knew that the older
woman had trouble crossing the mound, and knew she had

a safe alternative path to the bus via the gap by the fire
hydrant.

Because we are sitting in diversity, we must predict how
the Pennsylvania Supreme Court would rule. Surace v.
Caterpillar, Inc., 111 F.3d 1039, 1044 (3d Cir. 1997).
Although it has addressed this issue on different occasions
in recent years, the Pennsylvania Supreme Court has not
provided a definitive statement on the assumption of risk
doctrine. In 1981, a plurality of the court sought to abolish
the doctrine of assumption of risk "except where specifically
preserved by statute; or in cases of express assumption of
risk, or in cases brought under . . . a strict liability theory."
Rutter v. Northeastern Beaver County Sch. Dist., 437 A.2d
1198, 1209 (Pa. 1981). It adopted this position because it
believed juries were confused by the doctrine and because
it was bad public policy. The plurality also noted that, as a
complete bar to recovery, the affirmative defense of
assumption of risk frustrated the purpose of the state's
comparative negligence statute, which was to allow
plaintiffs to recover some damages despite some

unreasonable or negligent conduct.[1] The Rutter court observed that in most cases where assumption of risk is invoked to deny recovery, the court could reach the same result by holding the defendant owed the plaintiff no duty.

Two years later a majority of the court breathed new life into the assumption of risk doctrine. In Carrender v. Fitterer, 469 A.2d 120 (Pa. 1983), the plaintiff parked her car on a sheet of ice on a parking lot even though the remainder of the parking lot was ice-free. The court held that because the danger was both obvious and known to the plaintiff, the defendant owed no duty to the plaintiff. The court stated it would reach the same result whether

_____

1. The comparative negligence statute, 42 Pa. Cons. Stat. Ann. S 7102(a), provides: "In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence
was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff."

through analysis of the defendant's duty or application of the affirmative defense of assumption of risk. "When an invitee enters business premises, discovers dangerous conditions which are both obvious and avoidable, and nevertheless proceeds voluntarily to encounter them, the doctrine of assumption of risk operates merely as a counterpart to the possessor's lack of duty to protect the invitee from . . . risks." Id. at 125. [2] Furthermore, the court held that, although "the question of whether a danger was known or obvious is usually a question for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion." Id. at 124.

In 1993, the court once again considered the doctrine of assumption of risk, but this time was able to rule only as a plurality. In Howell v. Clyde, 620 A.2d 1107 (Pa. 1993), a three judge plurality noted that the status of the affirmative defense was unclear after Rutter and Carrender.[3] The plurality found the reasoning of the plurality in Rutter persuasive, holding that assumption of risk should be abolished "in essence" as an affirmative defense, except in cases where the defense is preserved by statute, is assumed

_____

2. This analysis fails to recognize two differences between the assumption of risk doctrine and a duty analysis: (1) the burden of proof to establish duty lies with the plaintiff, Morena v. South Hills Health Sys.,
462 A.2d 680, 684 (Pa. 1983), while the burden of proof for the affirmative defense of assumption of risk lies with the defendant, Watson v. Zanotti Motor Co., 280 A.2d 670, 672 (Pa. Super. Ct. 1971); (2) assumption of risk is traditionally a jury question, while determination whether a defendant owed a plaintiff a duty is for the court to decide as a matter of law, Howell v. Clyde, 620 A.2d 1107, 1108 n.1 (Pa. 1993) ("Whereas the questions of negligence and assumption of risk have traditionally been for the jury, the question of duty . . . is for the court.").
On this second point, the Carrender court noted only that, though "the question of whether a danger was known or obvious is usually a question for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion." 469 A.2d at 124.

3. In fact, one justice dissented in Howell  for this reason, stating only, "I
dissent. Until such time as this Court arrives at a clear-cut majority, we will continually muddy the waters in the sensitive areas of both comparative negligence and the assumption of risk, both of which are cornerstones of the negligence law in this Commonwealth." Howell, 620 A.2d at 1115 (Zappala, J., dissenting).

7

expressly, or in strict liability cases. Id. at 1113 n.10. The Howell plurality decided, however, that because "it is desirable to preserve the public policy behind assumption of risk . . . but to the extent possible, remove the difficulties of application of the doctrine and the conflicts which exist with our comparative negligence statute, to the extent that an assumption of risk analysis is appropriate in any given case, it shall be applied by the court as part of the duty analysis, and not as part of the case to be determined by the jury." Id. at 1112-13. The court went on to hold that a "court may determine that no duty exists only if reasonable minds could not disagree that the plaintiff deliberately and with the awareness of specific risks inherent in the activity nonetheless engaged in the activity that produced his injury." Id. at 1113.

Under both Carrender and Howell, the assumption of risk analysis is incorporated into the duty analysis. Even though the Howell court was unable to get majority support for this principle, this approach found in Carrender and

Howell is our best prediction of how the Pennsylvania
Supreme Court would analyze this case. Carrender is the
most recent Supreme Court decision commanding a
majority of justices. Therefore, it is Kaplan's burden to
establish that Exxon had a duty here, and not Exxon's
burden to prove Kaplan assumed the risk of her injury.
Under Carrender, this issue goes to the jury unless
reasonable minds could not disagree. Carrender, 469 A.2d
at 124.4

_____

4. The approaches in Howell and Carrender are similar, except that
Howell held the duty/assumption of risk issue is a question of law for
the court:

      [Our] approach preserves the public policy behind the [assumption
      of risk] doctrine while at the same time alleviating the difficulty
of
      instructing a jury on voluntariness, knowledge, and scope of the
      risk.

      Under this approach the court may determine that no duty exists
      only if reasonable minds could not disagree that the plaintiff
      deliberately and with the awareness of specific risks inherent in
the
      activity nonetheless engaged in the activity that produced his
injury.
      Under those facts, the court would determine that the defendant, as
      a matter of law, owed plaintiff no duty of care.

8

Exxon had no duty to Kaplan if she "discover[ed]
dangerous conditions which [were] both obvious and

_____

      If, on the other hand, the court is not able to make this
      determination and a nonsuit is denied, then the case would proceed
      and would be submitted to the jury on a comparative negligence
      theory. Under this approach, . . . assumption of the risk would no
      longer be part of the jury's deliberations or instructions.

Howell, 620 A.2d at 1113. This approach has much to commend it. But
Howell was only a plurality ruling and therefore does not displace the
prior majority ruling in Carrender that the duty/assumption of risk issue
goes to the jury. Williams v. Workmen's Compensation Appeal Board, 687
A.2d 428, 483 (Pa. Commw. Ct. 1997) (plurality opinion of state supreme
court not binding precedent).

Nonetheless, when a jury applies the law as stated in Carrender and

decides defendant owed a duty to plaintiff, we assume it must thereafter (as explained in Howell) apply the comparative negligence statute, 42 Pa. Cons. Stat. Ann. S 7102(a). See Carrender, 469 A.2d at 125 (recognizing the overlap between the doctrines of assumption of risk and comparative negligence, and stating, "For fault to be apportioned under the comparative negligence statute, there must be . . . a breach of duty by the defendant to the plaintiff . . . . Whatever the effect of the adoption of a system of comparative fault on the defense of assumption of risk where that defense overlaps and coincides with contributory negligence, the adoption of such a system has no effect where, as here, the legal consequence of the invitee's assumption of a known and avoidable risk is that the possessor of land is relieved of a duty of care to the invitee.").

As the Civil Instructions Subcommittee of the Pennsylvania Supreme Court Committee for Proposed Standard Jury Instructions noted, Pennsylvania courts have held the "Comparative Negligence Act would still apply where the underlying conduct of a plaintiff amounted to negligence," even though it may not have amounted to the "more culpable" conduct of actual assumption of risk. Pennsylvania Suggested Standard Civil Jury Instructions S 3.03A (Subcommittee Note on Assumption of Risk) (1991) (citing Berman v. Radnor Rolls, Inc., 542 A.2d 525 (1988)). See also Victor E. Schwartz, Comparative Negligence S9-4(b), at n.100 (3d ed. Supp. 1996).

We note this case would appear to be a good example of the type of assumption of risk which is better viewed as contributory negligence. The plaintiff has exposed herself to risk of future harm but has not consented to relieve the defendant of a future duty to act with reasonable care. Prosser and Keeton on Torts at 485 (W. Page Keeton ed., 5th ed. 1984). In cases like this one, it would appear that the comparative negligence approach is the better one.

9

avoidable, and nevertheless proceed[ed] voluntarily to encounter them." Carrender, 469 A.2d at 125. We agree with the district court that the snow mound was a known and obvious risk. But we do not agree that Kaplan acted voluntarily as a matter of law when she crossed over the snow mound. A plaintiff voluntarily confronts a danger only where there is a real "choice" involved, Howell, 620 A.2d at 1112, i.e. a safe alternative to encountering the risk. Prosser and Keeton on Torts S 68, at 490-91 (W. Page Keeton ed., 5th ed. 1984) (no assumption of risk where plaintiff has "no reasonable alternative."). The district court held there was such a safe alternative here, relying on its view that "[i]t was [Kaplan's] own idea to cross there as opposed to at a nearby, safe location." Kaplan, 926 F. Supp. at 62. But a jury could find there was no safe alternative route to the bus, because entering the street by

the fire hydrant would have required Kaplan to walk a distance back towards the bus stop in an icy street with traffic. Moreover, to avoid having to stand in the street (its roadway narrowed by ice and snow), she would have had to visualize the arriving bus and time her round-about traverse to the bus stop with some precision. Indeed, Kaplan testified at her deposition that she thought the bus would leave without her if she walked away from the bus stop towards the hydrant. If Kaplan had no reasonable alternative to climbing the snow mound, then a jury could find she did not act voluntarily and therefore did not assume the risk of injury.

Because reasonable minds could disagree whether Kaplan's actions were truly voluntary, we will vacate the grant of summary judgment on this ground.

B. Proximate Causation

Defendants contend we should affirm nonetheless because Kaplan failed to prove Exxon's alleged negligence proximately caused her injures. We may consider this argument as an alternative ground to affirm. United States v. Taylor, 98 F.3d 768, 774 (3d Cir. 1996) (appellee may assert any ground in support of the judgment below) (citing Colautti v. Franklin, 439 U.S. 379, 397 n.16 (1979)), cert. denied, 117 S. Ct. 1016 (1997).

10

The district court recognized that all eyewitnesses (including Kaplan) testified the snow mound "was between the bus stop sign and the bus" and that some eyewitnesses testified "the mound was in the street." Kaplan, 926 F. Supp. at 61. But the court denied summary judgment for Exxon, holding there is an issue of fact as to "where the mound of snow began or where its top was." Id.

Defendants contend it is irrelevant "where the mound of snow began or where its top was," because deposition testimony established that Kaplan slipped in the street. Kaplan testified at her deposition that she had climbed to the top of the mound of ice and snow when she fell. She ended up in the street, inches away from the bus. A witness, Lindsay Henderson, testified that Kaplan had reached the top of the mound, which was in the street, when she slipped. Another witness, Ronald Woodward, testified that Kaplan was at the top of the snowbank when she started to fall and that she fell in the street.

Defendants contend this proves as a matter of law that Exxon's alleged negligence did not cause her injuries.5 But Kaplan maintains there is an issue of fact "whether the snow mound existed on the sidewalk as well as the street and whether the top of the mound was on the sidewalk or in the street." Id. She points out there is testimony the snow mound "actually began at the bus stop sign, which

_____

5. Defendants point to Fedorczyk v. Caribbean Cruise Lines, Ltd., 82 F.3d 69 (3d Cir. 1996). In Fedorczyk, plaintiff slipped and injured herself in a bathtub on a cruise ship. She sued the cruise line for negligently placing non-slip abrasive strips too far apart in the bathtub. We affirmed the district court's grant of summary judgment for defendants because plaintiff could not prove "she was standing between the strips at the time of the accident." Id. at 75. Defendants contend that, under Fedorczyk, judgement must be entered against Kaplan because she failed to meet her burden to prove she was standing on the sidewalk, and not the street, at the time of her fall.

We disagree. In Fedorczyk, which applied New Jersey law, id. at 73, the exact location of plaintiff's feet at the time of her fall was determinative on the issue of causation; had she been standing on the abrasive strips, her fall could not have been caused by negligent overspacing. But the exact location of Kaplan's fall does not answer the causation question here.

11

was on the sidewalk, and then continued into the street." Id.

Although the issue is close, like the district court we believe there remains an issue of fact whether Exxon's negligence was a substantial factor in causing Kaplan's injuries. See Trude v. Martin, 660 A.2d 626, 633 (Pa. Super. 1995) (upholding jury verdict of liability against one who maintains premises, where invitee was sitting on a brick wall and was pushed, which dislodged a loose capstone on the wall causing the invitee to fall to the ground. Court held defendant's negligent maintenance of the capstone was a "substantial factor" in causing invitee's injuries.), appeal granted in part on unrelated grounds, 672 A.2d 279 (Pa. 1996).

C. Third-Party Defendants

The district court granted summary judgment to the third-party defendants "upon consideration of the[ir] Motion[s] for Summary Judgment . . . and, in light of this

Court's Grant of Summary Judgment in favor of Exxon Corp." The third-party defendants contend we should affirm summary judgment in their favor even if we reverse the grant of summary judgment to Exxon.

The third-party defendants maintain summary judgment in their favor is warranted because Exxon failed to present any evidence that Anderson or Morrissey plowed the area of Levick Street and Oxford Avenue, created the snow mound in question, or that the snow mound was negligently created. But we will not reach the merits of the third-party defendants' motions where the district court did not.6 We will reverse and remand the grant of summary judgment to the third party defendants and direct the district court to consider their motion on the merits.

_____

6. The third-party defendants contend the district court did reach the merits, as evidenced by its order stating, "upon consideration of the [third-party defendants'] Motion[s] for Summary Judgment." But this statement does not indicate the district court considered the merits of their motions. The only reason the district court gave for granting summary judgment was that it did so in light of its grant of summary judgment to Exxon.

12

IV. Conclusion

For the foregoing reasons, we will reverse and remand for proceedings consistent with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

13