

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-9-2001

# Kirschbaum v. WRGSB Assoc

Precedential or Non-Precedential:

Docket 00-1017

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Kirschbaum v. WRGSB Assoc" (2001). *2001 Decisions.* Paper 44.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/44

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 9, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 00-1017 & 00-1023

MICHAEL KIRSCHBAUM;
HELEN KIRSCHBAUM,

v.

WRGSB ASSOCIATES d/b/a GSB BUILDING;
THE BALCOR COMPANY

v.

INSIGNIA COMMERCIAL GROUP

WRGSB Associates;
The Balcor Company,
        Appellants in 00-1017

Insignia Commercial Group,
        Appellant in 00-1023

Appeal from the United States District Court
for the Eastern District of Pennsylvania.
(Civil No. 97-cv-05532)
Magistrate Judge: Thomas J. Rueter

Argued: December 4, 2000

Before: McKEE, ROSENN, and CUDAHY,*
Circuit Judges.

(Filed: March 9, 2001)

_____
* Honorable Richard D. Cudahy, Circuit Judge, U.S. Court of Appeals for
the Seventh Circuit, sitting by designation.

Thomas P. Bracaglia, Esq. (Argued)
Frank S. Nofer, Esq.
Kelly, McLaughlin & Foster
1617 John F. Kennedy Boulevard
Suite 1690
Philadelphia, PA 19103
 Counsel for Appellants/
Cross-Appellees

Carl D. Buchholz, III, Esq. (Argued)
Thomas A. Kuzmick, Esq.
Michael A. Meehan, Esq.
Rawle & Henderson
1339 Chestnut Street
1 South Penn Square
Widener Building
16th Floor
Philadelphia, PA 19107
 Counsel for Appellee/
Cross-Appellant

OPINION OF THE COURT

CUDAHY, Circuit Judge.

On September 12, 1995, Michael Kirschbaum fell down a stairway in the GSB Office Building, located in Bala Cynwyd, Pennsylvania. Kirschbaum sustained serious injuries as a result of the fall and, seeking compensation for these injuries, sued the building's owner , WRGSB Associates (WRGSB). In turn, WRGSB filed a third-party complaint against Insignia Commercial Gr oup (Insignia), the building manager with whom WRGSB had contracted to manage, maintain and repair the building. Both parties settled with Kirschbaum, but retained their r espective rights of contribution and indemnity. The United States District Court for the Eastern District of Pennsylvania apportioned liability equally between the two parties and required each party to pay half of the settlement amount. The parties appeal, each seeking to have the other bear the full cost of settlement. We affirm.

2

I. BACKGROUND

Michael Kirschbaum maintained a medical practice in the
GSB Building, where he had been a tenant since 1988. On
average, Kirschbaum worked six days a week, often arriving
at the building's parking garage before 7:00 a.m., when the
building opened. Because the building was still closed at
the time of Kirschbaum's arrival, he would walk up aflight
of stairs that led to a door to the building, a key to which
he had been supplied by Insignia, the building manager.
This flight consisted of 15 steps, and it was walled on both
sides. A wall-mounted handrail ran up one of these walls,
but, at the bottom of the stairwell, the handrail had become
detached from the wall and was resting on the stairs. While
Kirschbaum was aware of the broken handrail (it had been
broken ever since he became a tenant in the GSB building),
he nonetheless continued to use the stairs.

At approximately 6:00 a.m. on September 12, 1995,
Kirschbaum arrived at the building and parked in the lower
parking garage. As he was climbing the stairs leading to the
building, Kirschbaum stumbled while attempting to place
his foot on the fifth step. Because the stairway's handrail
was broken and resting on the stairs at the fifth step,
Kirschbaum was unable to catch himself, and he fell to the
bottom of the stairs. As a result of the fall, Kirschbaum
suffered not only from fractur ed bones, but also from a
chronic infection of the right leg which may r equire the
amputation of that leg. See Kirschbaum v. WRGSB
Associates, No. 97-5532, slip op. at 2 n.1 (E.D. Pa. filed
Dec. 14, 1999).

Kirschbaum sued WRGSB, the owner of the building, and
the district court properly asserted jurisdiction over the
matter pursuant to 28 U.S.C. S 1332. Kirschbaum alleged
that he tripped on a step (also known as a "riser") that was
5/8 of an inch taller than the other steps in the stairwell,
and further stated that he was subsequently unable to
arrest his fall due to the broken handrail. As such,
Kirschbaum alleged two causes of his fall: (1) the riser
height discrepancy and (2) the broken handrail.

Because WRGSB had hired Insignia to not only manage,
but also maintain and repair, the building--including the

stairwell in which Kirschbaum was injured--WRGSB brought a third-party action against Insignia, seeking contribution or indemnification. The district court exercised supplemental jurisdiction over Insignia pursuant to 28 U.S.C. S 1367. WRGSB maintained that it r elied on Insignia to manage and maintain the GSB building, and that Insignia was paid handsomely to do so. WRGSB further stated that it did not have any employees on site because Insignia provided several on-site management and engineering personnel pursuant to the property management agreement. As a result, WRGSB maintained that Insignia ought to be solely responsible for the injuries Kirschbaum sustained as a result of the riser height discrepancy and broken handrail, both of which WRGSB believed that Insignia was responsible for corr ecting under the property management agreement.

All of Kirschbaum's claims were settled on September 14, 1998, with WRGSB and Insignia each contributing half of the $1,750,000 settlement amount, but retaining their respective rights of indemnity and contribution. Subsequently, both parties filed motions for summary judgment, seeking to have the other bear the full cost of settlement. The parties based their motions for summary judgment on contradictory interpretations of the property management agreement: WRGSB argued that, under the terms of the agreement, Insignia was wholly responsible for maintaining the stairwell, while Insignia contended that WRGSB was required, under the agreement, to purchase insurance and fully indemnify Insignia.

Following the motions for summary judgment, the magistrate judge assigned to the case issued a r eport and recommendation which concluded that both parties were equally negligent in causing Kirschbaum's fall. In accordance with this determination, the magistrate judge recommended that the parties bear the cost of settlement equally. The district court adopted most of the magistrate judge's report and recommendation, but r eferred the apportionment of liability issue back to the magistrate judge for an evidentiary hearing.

At the evidentiary hearing, WRGSB presented the testimony of various Insignia employees. This testimony

4

was somewhat cumulative and can be summed up as generally showing that the employees believed Insignia's job was to repair and maintain the GSB Building. In addition to this testimony, Dan Grinnan, Insignia's chief engineer at the GSB building, testified that he attempted to re-weld the broken brackets holding the handrail to the wall before Kirschbaum's accident, knew those repairs had failed and was aware that the handrail was still broken on the day of the accident. Nonetheless, Grinnan never notified WRGSB or Kirschbaum that the handrail was broken. Insignia countered by calling Charles Goedken, a civil engineer, as its expert witness. He testified that there was a 5/8 inch discrepancy in one of the stairway's risers, that such a discrepancy did not conform to generally accepted engineering standards and that such a discrepancy created a foreseeable risk of falling.

Following the hearing, the magistrate judge again found that WRGSB and Insignia were equally liable for the settlement cost. The magistrate judge held that WRGSB had a duty to discover and remedy the riser height discrepancy, and that Insignia had a separate duty to repair the broken handrail. Accordingly, the magistrate judge ordered them each to pay one half of the settlement amount. WRGSB appeals, and Insignia cross-appeals. We have jurisdiction under 28 U.S.C. SS 636(c)(3) & 1291.

## II. DISCUSSION

Not surprisingly, WRGSB believes that Insignia is solely responsible for Kirschbaum's injuries because the property management agreement required Insignia to take responsibility for the physical condition of all aspects of the staircase, including the handrail and the stair risers. Insignia cross-appeals, arguing that WRGSB should pay the entire settlement amount because: (1) the agreement required WRGSB to provide primary insurance coverage for Insignia; (2) WRGSB should not have been able to seek contribution or indemnity from Insignia without first establishing that WRGSB was liable to Kirschbaum for his injuries; and (3) Kirschbaum assumed the risk of injury presented by the handrail.

5

Because this is a diversity case, we must first determine the substantive state law that is to govern our decision. In making this determination, we first look to the conflict of laws rules of the forum state, Pennsylvania. See Assicurazioni Generali, S.P.A. v. Clover, 195 F.3d 161, 165 (3d. Cir. 1999). For substantive tort law issues, Pennsylvania uses a combination of the "gover nment interest" and "significant relationship" approaches to conflict of laws analysis. Under this analysis,"a court must evaluate `the extent to which one state rather than another has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law.' " See Troxel v. A.I. duPont Inst., 636 A.2d 1179, 1181 (Pa. Super. Ct. 1994). Neither party disputes that Pennsylvania law applies to the tort aspects of this case, and our r eview of the facts confirms that the parties ar e correct: this case involves an accident in Pennsylvania on a stairwell that is subject to Pennsylvania building codes and r egulations. As such, Pennsylvania has a priority interest in the application of its tort law to this cause. However, because the property management agreement so specifies, see Agmt. at S 7.3, Illinois' substantive law of contracts applies to interpretation of the agreement. See Kruzits v. Okuma Mach. Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994) (Pennsylvania law generally respects parties' choice of law).

A. WRGSB's Appeal

Before reaching WRGSB's main argument, we review three inadequately supported claims that WRGSB raises in the footnotes of its opening brief. These ar guments are: (1) that the magistrate judge erred in allowing Insignia to call Goedken as its expert witness because "Insignia never identified Goedken as its expert witness as r equired by the Court's pre-trial rulings . . . ," see Appellant's Br. at 18 n.1; (2) that the magistrate judge erred in deter mining that WRGSB was a "possessor" of the premises at the time of the accident, see id. at 45 n.11;1 and (3) that the magistrate

_____

1. We recognize that WRGSB develops this argument more fully in its response to Insignia's cross-appeal. However, because the argument could have been raised as an issue for review in WRGSB's opening brief

judge erred in concluding that the riser height discrepancy constituted a structural defect instead of being a consequence of normal wear and tear, see id. at 47 n.13. WRGSB has not presented any of these holdings as a basis for its appeal, and WRGSB does not mention these arguments in its statement of the issues for r eview, as required by Rule 28(a)(5) of the Federal Rules of Appellate Procedure. See Appellant's Br. at 3-4. We therefore will not reach any of these arguments. See T ravitz v. Northeast Department ILGWU Health and Welfare Fund, 13 F.3d 704, 711 (3d Cir. 1994). But, even if we wer e to reach WRGSB's arguments, we could not decide them on their merits since they are poorly briefed and deserve mor e development than passing mention in a footnote for us take them seriously. As a result, we will not examine whether the magistrate judge erred in allowing Insignia to call Goedken as its expert witness. Further, we accept the magistrate judge's finding that WRGSB "possessed" the building at the time of the accident and that the riser height discr epancy constituted a structural defect.

WRGSB's remaining arguments can all be r educed to one claim: that Insignia should be responsible for the entire settlement amount because the property management agreement obligated Insignia to discover and correct defects in both the stair risers and the handrail. Both parties agree that Insignia was solely responsible for r epairing the defective handrail.2 Ther efore, our discussion focuses

_____

--which would have required that WRGSB include the issue in its statement of issues for review and fully develop an argument in the argument portion of its brief--we will not address it. See FDIC v. Deglau, 207 F.3d 153, 169 (3d Cir. 2000) (issues not raised in opening brief on appeal are waived). However, even if we were to entertain WRGSB's appeal of the magistrate's factual determination, we would do so under a clearly erroneous standard of review. See A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 166 F.3d 197, 201-02 (3d Cir. 1999). And, contrary to WRGSB's contention, we have found nothing in the record to indicate that the magistrate committed clear err or in determining that WRGSB was a "possessor" of the stairwell in which Kirchbaum was injured at the time of the accident.

2. Insignia stipulated to its responsibility for maintaining and repairing the handrail in the district court, see Kirschbaum v. WRGSB Associates,

primarily on which party must accept responsibility for the injuries arising out of the riser height discr epancy.

As owner of the GSB building, WRGSB is charged with the following duty:

> A possessor of land is subject to liability for physical harm caused to his invitees[3] by a condition on the land if, but only if, he:
>
> (a) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of har m to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to pr otect themselves against it, and
>
> (c) fails to exercise reasonable car e to protect them against the danger.

Restatement (Second) of Torts S 343 (adopted by the Pennsylvania Supreme Court in Carrender v. Fitterer, 469 A.2d 120, 123 (1983)) (footnote added). Thus, WRGSB is obligated to discover and repair the riser height discrepancy that caused Kirschbaum's fall if, by the exer cise of reasonable care, WRGSB is capable of discovering the defect, and WRGSB should expect that Kirschbaum would not discover the defect himself.

The magistrate judge determined that WRGSB met these requirements, and WRGSB does not dispute this finding except to argue that the riser height discr epancy is a trivial defect--an argument that is related to WRGSB's ability to discover the riser height discrepancy. In support, WRGSB cites several older Pennsylvania cases where approximately

_____

No. 97-5532, slip op. at 10, P 36 (E.D. Pa.filed Dec. 14, 1999), and admits in its reply brief that it "has long since accepted responsibility" for this liability. Appellee's Br. at 25. As discussed below, however, Insignia does not believe that it ought to pay for any liability arising out of its failure to repair the handrail because it believes that, under the agreement, WRGSB's insurance should cover the liability.

3. The parties do not dispute that Kirschbaum was an invitee on WRGSB's premises.

8

1.5 inch sidewalk and roadway discrepancies were found to be trivial. See, e.g., Bosack v. Pittsburgh Railways Co., 189 A.2d 877 (Pa. 1962); German v. City of Mckeesport, 8 A.2d 437 (Pa. Super. 1939). While the riser defect here was only 5/8 inch, it occurred on a stair riser, a place where the defect is likely to be far less obvious than on aflat surface such as a road (and thus more difficult to protect against). Relatedly, discrepancies of this kind ar e far more common (and therefore foreseeable) on a sidewalk than on a flight of stairs. Indeed, Insignia's expert witness––whom the district court found more credible than WRGSB's expert witness–– testified that a 5/8 inch discrepancy cr eated a foreseeable risk of falling. As such, the district court did not err in determining that WRGSB was requir ed to discover and remedy the riser height discrepancy.

While WRGSB is thus charged with the duty to discover and repair the riser height discrepancy, WRGSB argues that its relationship to Insignia is such that Insignia is primarily liable to Kirschbaum for the injury he suf fered as a result of the riser height discrepancy. As a result, WRGSB believes that it is entitled to indemnification fr om Insignia, a right that "enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable." Builders Supply Co. v. McCabe, 77 A.2d 368, 370 (Pa. 1951). WRGSB maintains that it is only secondarily liable––and Insignia primarily liable––for the damage to Kirschbaum because the agreement between itself and Insignia obligated Insignia to corr ect not just the broken handrail, but the riser height discr epancy as well.

Accordingly, we must look to the agreement between WRGSB and Insignia in order to determine which party assumed the primary obligation for discovering and correcting the riser height discrepancy. As noted, we interpret the contract in accordance with standards dictated by Illinois law. Under Illinois law, a contract's express provisions govern when the contract is unambiguous. See Wright v. Chicago T itle Ins. Co., 554 N.E.2d 511 (Ill. App. Ct. 1990). If a contract's language cannot be interpreted in more than one way, "[a] court

must construe the meaning of [the] contract by looking at words used and cannot interpret the contract in a way contrary to the plain and obvious meaning of these words." J.M. Beals Enterprises, Inc. v. Industrial Har d Chrome, Ltd., 551 N.E.2d 340, 342 (1990). "Unless the contract clearly specifies its own meanings, the court must interpr et the words or language of the contract with their common and generally accepted meanings." Id. at 342-43. Further, "the court must place the meanings of words within the context of the contract as a whole." Id. at 343.

On appeal, WRGSB bases its argument primarily on S 2.4 of the agreement, which reads in r elevant part:

> [Insignia] shall . . . maintain the buildings, appurtenances and common areas of the [GSB Building] in good condition according to local standards for comparable properties in the immediate market area surrounding the Property, and, in any event, in accordance with the standards and conditions specified by [WRGSB Associates] from time to time. Maintenance and repair items shall include, but shall not be limited to, interior and exterior janitorial services, exterior grounds and landscaping services, repairs and alterations to existing impr ovements, plumbing, parking areas, electrical systems[,] painting, carpentry, maintenance and repair of mechanical systems and such other maintenance and r epair work as is reasonably necessary.

Appx. at 233 (emphasis added). WRGSB also cites two other sections of the agreement as evidence of Insignia's alleged obligation to correct the riser height discrepancy. Section 2.9 of the agreement states that Insignia must use due care in the selection and supervision of its on-site personnel. See Appx. at 237. In addition, S 2.13 of the agreement requires Insignia to use its best efforts to ensure that the GSB Building is kept in compliance with applicable building codes. See Appx. at 240. WRGSB ar gues that these contract provisions clearly transfer to Insignia the building owner's duty to discover and remedy all hazar dous conditions on the premises.

As an initial matter, WRGSB's reliance on sections 2.9 (requiring due care in the selection of on-site personnel)

10

and 2.13 (requiring compliance with applicable laws and building codes) is misplaced. WRGSB has simply failed to produce any evidence that Kirschbaum's accident is due to Insignia's negligently hiring on-site personnel. Neither has WRGSB shown that Kirschbaum's accident resulted from Insignia's failure to maintain the GSB building in accordance with applicable building codes. Consequently, neither S 2.9 nor S 2.13 of the agr eement aids WRGSB's argument.

We also disagree with WRGSB's reliance on S 2.4 of the agreement, for WRGSB appears to confuse Insignia's obligation to maintain and repair the building with an obligation to discover structural defects, such as the riser height discrepancy. That the agreement does not require Insignia to discover latent structural defects is apparent from the language of S 2.4, which r epeatedly emphasizes Insignia's duty to undertake "maintenance" and "repairs." The two bases of liability at issue in this case--the defective handrail and the riser height discrepancy--pr ovide a perfect example of how "maintenance" and "r epairs" should be interpreted: fixing a defective handrail is clearly an act of maintenance and repair, while discovering and mending a riser that has likely been defective since the building was constructed is not.

That maintenance and repairs do not include the obligation to discover latent structural defects is also supported by the meaning commonly ascribed to these words. "Maintenance" is defined by Webster's New World Dictionary 854 (2d College Ed. 1979), to include "the work of keeping a building . . . in a state of good r epair." "Repair" is defined as "to put back in good condition after damage, decay, etc." Id. at 1204. These definitions both point to the act of fixing a deteriorated part of the building, which though originally sound, has fallen into disr epair. The definitions do not contemplate fixing a part of the building that was originally defective. Indeed, a finding that the agreement required Insignia to discover the riser height discrepancy would necessarily include a finding that Insignia is not only responsible for measuring every stair riser in the GSB building, but also responsible for other acts that are clearly not contemplated by the agreement,

11

such as inspecting the building's foundation. We therefore conclude that the agreement failed to delegate unambiguously the duty to discover the riser height discrepancy to Insignia.

WRGSB's confusion regarding the difference between ordinary maintenance and repair and thefixing of latent structural defects extends to WRGSB's argument that the magistrate judge failed to apply the law of the case when apportioning liability between the two parties. In its June 28, 1999 Memorandum and Order, the district court stated that Insignia was obligated under its agreement with WRGSB to maintain the stairway and handrails. WRGSB argues that the magistrate judge failed to adhere to this determination because he found that WRGSB was responsible for discovering the riser height discrepancy. As is apparent from our discussion, however, the district court's finding that Insignia was responsible for maintaining the stairway in no way contradicts the magistrate judge's finding that WRGSB was responsible for discovering the riser height defect.

WRGSB's argument that it cannot be held to a greater duty of care than Insignia fails for the same reason. The Restatement (Second) of Torts S 324A (adopted by the Pennsylvania Supreme Court in Cantwell v. Allegheny County, 483 A.2d 1350 (Pa. 1984)) imposes a duty of reasonable care on parties (like Insignia) who render services for the protection of a third party (like Kirschbaum). From this, WRGSB argues that any duty of reasonable care it possessed by virtue of Restatement (Second) of Torts S 322 was delegated to Insignia by the agreement because Insignia assumed a duty of reasonable care under Restatement (Second) of Torts S 324A when it entered into the Agreement. WRGSB might have a valid argument had it delegated its duty to discover the riser height discrepancy to Insignia. However, WRGSB did not do so. Consequently, it retained the duty to inspect for and discover the riser height discrepancy and cannot shift liability for its failure to do so to Insignia.

In an attempt to revise the agreement's unambiguous terms, WRGSB seeks to have us recognize the testimony of Insignia's on-site property manager, on-site chief engineer

12

and on-site engineer. WRGSB believes that this testimony will shed new light on what the parties truly intended when they entered into the agreement. However , under Illinois law, extrinsic evidence--such as oral testimony--is not permitted as a means of clarifying an unambiguous contract. See Air Safety, Inc. v. Teachers Realty Corp., 706 N.E.2d 882, 884 (Ill. 1999). Because much of WRGSB's proffered testimony derives fr om depositions that are such extrinsic evidence, we will not consider this testimony.

However, even if we were to consider all of the testimony, it would do little to aid WRGSB's argument. Each of Insignia's employees stated only that Insignia was responsible for the inspection, maintenance and repair of the stairway. The testimony of Kelly Buechler , a senior legal assistant and assistant secretary at Insignia, as well as Insignia's Federal Rule of Civil Procedur e 30(b)(6) designee, is illustrative. She testified as follows:

> Q: As part of the Property Management Agr eement what is it that Insignia Commercial Group provided with regard to the GSB Building what did they do?
>
> A: They maintained, leased, and managed the property on behalf of the owner.
>
> * * *
>
> Q: As part of the Insignia Commercial Gr oup's management agreement with WRGSB Associates was Insignia Commercial Group responsible for maintaining the stairways inside the GSB Building?
>
> A: Yes.
>
> * * *
>
> Q: [The Property Management Agreement] obligated Insignia Commercial Group to maintain the GSB Building?
>
> A: Yes.
>
> * * *

13

> Q: Such maintenance would have involved r epairing
> any condition found of the stairwell or handrail
> leading from the underground parking garage to
> the GSB Building . . .?
>
> A: Yes.

Appx. 651-52, 658-60. Just as with the agreement's express language, this testimony does not establish that Insignia was responsible for anything other than maintenance and repair. And as we have discussed, the duty to detect and correct latent structural defects does not follow from the duty to maintain and repair. As such, the testimony of Insignia's employees does not show that Insignia assumed WRGSB's common law responsibility to inspect for and detect latent structural defects.

B. Insignia's Cross-Appeal

Having disposed of WRGSB's direct appeal, we turn next to Insignia's cross-appeal. Even though Insignia has admitted its responsibility for maintaining the handrail, it presents three unavailing arguments in hope of shifting the entire cost of settlement to WRGSB: (1) that, pursuant to the agreement, WRGSB's insurance policy covers Insignia as well; (2) that WRGSB has failed to prove facts that are necessary to establish its right to contribution and indemnity from Insignia; and (3) that Kirschbaum assumed the risk presented by the broken handrail.

1. The Agreement's Insurance Pr ovisions

Insignia argues that it should not have to pay its share of the settlement because the agreement r equired WRGSB to purchase general liability insurance and to name Insignia as an additional insured on the policy. The provision on which Insignia relies states:

> Owner shall carry, at its own expense, commer cial
> general liability insurance in such amounts that owner,
> in its sole and absolute discretion, deems necessary for
> the protection of owner's interest in the Property, and
> such insurance shall be deemed the primary insurance
> on the Property. Policies of commercial general liability
> insurance carried by owner shall include manager . ..

14

> as an additional insured party only in manager's
> capacity as manager of the property.

See Appx. 244; Agmt. S 5.1. Insignia argues that the clear meaning of this requirement is that WRGSB's insurance should cover Insignia. However, in reaching its conclusion Insignia ignores S 5.8 of the agr eement, which states that Insignia has no right to recover against WRGSB or its insurance carrier on any claim to the extent that the claim arises out of Insignia's own negligence. See Appx. at 246. As noted, Insignia has already admitted liability for the handrail--a liability that clearly arises out of Insignia's own negligence in failing to properly secur e the handrail. Therefore, the language of the agr eement makes clear that WRGSB's insurance does not cover Insignia for its own negligent failure to repair the br oken handrail.

## 2. WRGSB's Liability to Kirschbaum

Insignia next argues that WRGSB cannot now seek contribution or indemnity from Insignia because WRGSB did not prove its own liability to Kirschbaum. Contribution applies when a plaintiff and defendant ar e joint tortfeasors. See Builders Supply Co. v. McCabe, 77 A.2d 368, 370 (Pa. 1951). Contribution comes into force when one joint tortfeasor has discharged a common liability or paid more than its share of such liability, in which case the joint tortfeasor is entitled to reimbursement fr om the other tortfeasors to the extent that its payment exceeded its own liability. Conversely, the right of indemnification arises when there is a "difference between the primary and the secondary liability of two persons each of whom is made responsible by the law to an injured party." Id. In such a case, the party that is secondarily liable may seek complete reimbursement from the party that is primarily liable for any damages the first-mentioned party has paid.

A party pursuing claims for contribution and indemnity can do so only if it has established that it was itself liable to the plaintiff for the plaintiff 's injury. See 42 Pa. C.S.A. S 8324(a) (West 1998) (contribution only available among joint tortfeasors); 42 Pa. C.S.A. S 8322 (W est 1998) (joint tortfeasor is, in part, one who is liable to plaintiff); Builders Supply Co. v. McCabe, 77 A.2d 368, 370 (Pa. 1951)

15

(indemnity may be pursued by a "person who without actual fault on his own has been compelled by r eason of some legal obligation to pay damages . . . ."). Insignia argues that WRGSB has not established its own liability to Kirschbaum, and that WRGSB may thus not seek contribution or indemnity from Insignia. However, while we think it likely that WRGSB was legally liable to Kirschbaum --as we have noted, WRGSB is primarily liable for its failure to correct the riser height discr epancy and secondarily liable for Insignia's failure to r epair the handrail --WRGSB need not prove this here. As determined above, both parties are equally liable to Kirschbaum, but on their own, distinct grounds: WRGSB's liability arises out of its failure to correct the riser height discr epancy and Insignia's liability arises out of its failure to r epair the handrail. The parties are thus required to pay equal shares of the settlement, representing their equal, but distinct, bases of liability to Kirschbaum. Therefore, Insignia is not entitled to contribution or indemnity from WRGSB. Insignia's argument that WRGSB must prove its liability to Kirschbaum thus misses the point and does nothing to alter the parties' obligation to each pay half of the settlement.

3. Kirschbaum's Assumption of Risk

Insignia lastly argues that it cannot be liable for its failure to repair the handrail because Kirschbaum was aware of the broken handrail and assumed the risk of any injury resulting from it. Under Pennsylvania law, assumption of risk is established by showing that the injured party fully appreciated the natur e of the risk it faced and voluntarily assumed it. See Bar nes v. American Tobacco Co., 161 F.2d 127, 149 (3d Cir. 1998). In addition, the injured party must not have had a meaningful and reasonable alternative path to avoid the risk. See Kaplan v. Exxon Corp., 126 F.3d 221, 226 (3d Cir . 1997). Whether a party assumed a risk is a question of fact that is r eviewed for clear error. See Kaplan, 126 F.3d at 225 (assumption of risk generally a question of fact); A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc. , 166 F.3d 197, 201-02 (3d Cir. 1999) (questions of fact reviewed for clear err or).

16

Insignia argues that Kirschbaum assumed the risk of injury resulting from his fall because he was aware of the broken handrail and had used the stairwell for years in spite of it. We believe, however, that the magistrate judge correctly concluded that Kirschbaum did not fully appreciate the extent of the risk he faced. It is true that Kirschbaum was aware of the broken handrail, and thus knew that it would not aid him were he to trip while on the stairs. However, the risk presented by the broken handrail includes not just an appreciation of the har m likely to result were Kirschbaum ever to need the handrail, but also an appreciation of the likelihood that Kirschbaum would in fact have to rely on the handrail to br eak a fall. This latter component of the handrail's risk was not appr eciated by Kirschbaum: he knew that he might accidently trip when climbing the stairs, but was completely unawar e of the riser height discrepancy, which increased the likelihood of a fall and thus the likelihood that he would need to r ely on the handrail.

Kirschbaum also failed to assume the risk arising out of his use of the stairs because he did not have a r easonable alternative route. While Kirschbaum could have entered the building from one other entrance, this entrance--like the entrance used by Kirschbaum--was locked when Kirschbaum arrived in the morning. An Insignia employee provided Kirschbaum with the stairwell key and directed him to use the stairwell. As such, the stairwell was usually the only way for Kirschbaum to enter the building because he arrived at work before other building entrances opened. Consequently, Kirschbaum had no other reasonable route into the building, and he did not assume the risk pr esented by the broken handrail.

III. CONCLUSION

For the foregoing reasons, the decision of the district court is Affirmed.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

17