

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-3-2006

# Zavecz v. Yield Dynamics Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2232

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Zavecz v. Yield Dynamics Inc" (2006). *2006 Decisions.* Paper 1160.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1160

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 05-2232

_____

DONNA J. ZAVECZ,
Appellant

v.

YIELD DYNAMICS, INC.


_____

On Appeal From the United States
District Court
For the Eastern District of Pennsylvania
(D.C. Civil Action No. 03-cv-05023)
District Judge:  Hon. Juan R. Sanchez

_____

Argued March 8, 2006

BEFORE:  AMBRO and STAPLETON,
Circuit Judges, and STAGG,* District Judge

(Opinion Filed: May 3, 2006 )

_____

_____

* Hon. Tom Stagg, Senior United States District Judge for the Western District of
Louisiana, sitting by designation.

Kevin T. Fogerty (Argued)
Mill Run Office Center
1275 Glenlivet Drive - Suite 150
Allentown, PA  18106
  Attorney for Appellant

Jack M. Seitz (Argued)
Blank Rome
1620 Pond Road - Suite 200
Allentown, PA  18104
  Attorney for Appellee

_____

OPINION OF THE COURT

_____

STAPLETON, Circuit Judge:

In May 1999, Donna Zavecz and her husband Terrence, as shareholders and officers of TEA Systems Corporation ("TEA"), entered into an "Asset Purchase Agreement" with Yield Dynamics, Inc. ("YDI"), a California company that deals in the computer market for the semi-conductor industry.  In exchange for TEA's software assets, YDI agreed to transfer 100,000 shares of its company to the Zaveczs (49,000 to Donna, 51,000 to Terence), 20% of which (9,800 and 10,200 respectively) were to be held in escrow until May 31, 2002.  In January 2001, YDI's stock split, doubling the number of shares for each shareholder.  In May 2002, YDI released neither the escrowed shares nor the shares acquired in the stock split to Zavecz.

2

In August 2003, Zavecz sued YDI in Leheigh County Court. Count I of her complaint sought a declaratory judgment declaring her right to the 9,800 escrowed shares. Count II claimed that YDI was liable to Zavecz for conversion as to those shares. Count III sought a declaratory judgment that Zavecz was entitled to an additional 49,000 shares due to the stock split and Count IV claimed conversion as to those shares. YDI removed the case to federal court, filed an answer, and asserted two counterclaims against Zavecz. In the counterclaims, YDI sought damages for the failure to transfer all intellectual property interests from TEA to YDI in breach of the Asset Purchase Agreement and a declaratory judgment to the effect that it was under no obligation to issue any shares to Zavecz.

Zavecz moved for summary judgment as to Counts I and III of her complaint and Count II of YDI's counterclaims. The District Court granted summary judgment in Zavecz's favor on Counts I and III, but not as to YDI's counterclaim, holding that Zavecz "was entitled to the escrowed shares and the stock split shares" as a matter of law. App. at 4. On the eve of trial on the remaining issues, the parties reached a settlement. In exchange for Zavecz dismissing her conversion claims with prejudice, YDI released the disputed shares to her and terminated its counterclaims against Zavecz with prejudice. Both sides reserved the right to file and oppose motions for attorneys' fees.

After filing this settlement with the District Court, Zavecz sought attorneys' fees in three separate categories: (1) fees related to recovering the 9,800 shares of stock, (2) fees

related to obtaining the 49,000 shares, and (3) fees related to defending against YDI's counterclaim. Zavecz claimed to be entitled to her expenses in the first and third categories based on a provision in the Asset Purchase Agreement. In the third category of fees – expenses related to defending against YDI's counterclaim – Zavecz sought reimbursement for fees charged by attorneys in both Pennsylvania and California. In her motion, she attached two different affidavits from the two different attorneys. Her Pennsylvania attorney attested to having spent 62.70 hours, which totaled $9,578 in fees, in this category.

The District Court awarded attorneys' fees in part and denied them in part. As an initial matter, the District Court determined that California substantive law governed the issue. It applied Pennsylvania choice-of-law rules in accordance with *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941), and found that those rules give effect to contractual choice-of-law provisions. The District Court found that the Asset Purchase Agreement contained a provision that read:

> The validity, construction and performance of this Agreement, and any Action arising out of or relating to this Agreement shall be governed by the Laws of the state of California.

App. at 45. The District Court agreed with Zavecz that the Asset Purchase Agreement provided a basis for recovering the first and third category of fees she sought.[1] The fee-shifting provision read:

---

[1] The Court rejected the second category of fees – recovering the stock split shares – finding that Zavecz had withdrawn her argument for them.

4

> If any Action is commenced by either party concerning this agreement, the prevailing party shall recover from the losing party reasonable attorneys' fees and costs and expenses, including those of appeal and not limited to taxable costs, incurred by the prevailing party, in addition to all other remedies to which the prevailing party may be entitled.

App. at 45-46. The District Court determined that Zavecz was the prevailing party and awarded Zavecz the first category of fees she requested. The District Court described the third category of expenses – the fees related to defending against YDI's counterclaim – as fees incurred by a California attorney and disallowed them as that attorney did not represent her in the litigation. The Court did not mention the $9,578 incurred by Zavecz's Pennsylvania attorney in preparing to defend against YDI's counterclaim.

After the District Court issued its opinion, Zavecz moved for reconsideration, arguing that the Court had overlooked the fees her Pennsylvania attorney charged to prepare her defense against YDI's counterclaim. The District Court denied this motion for reconsideration without opinion. Zavecz appealed.

The District Court had diversity jurisdiction over this lawsuit under 28 U.S.C. § 1332(a) and we have jurisdiction under 28 U.S.C. § 1291.[2] "[W]e review the reasonableness of a district court's award of attorneys' fees for an abuse of discretion." *County of Morris v. Nationalist Movement*, 273 F.3d 527, 535 (3d Cir. 2001). In determining if a District Court has abused its discretion, we review factual findings for

---

[2] While this appeal does involve less than $75,000, "diversity of citizenship is assessed at the time the action is filed." *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 427 (1991).

clear error and our review of legal questions is plenary. *See id.* ("The . . . question directed at the adequacy of the fee application implicates both the legal standard for evaluating the . . . application (over which we exercise plenary review), and the factual finding that certain expenses billed were excessive and unreasonable (which we review for clear error)."); *Rode v. Dellarciprete*, 892 F.2d 1177, 1182-83 (3d Cir. 1990) ("We review the reasonableness of an award of attorney's fees for an abuse of discretion. An abuse of discretion can occur when no reasonable person would adopt the district court's view. Whether the district court applied the proper standards or procedures is a question of law subject to plenary review. The district court's factual findings are reviewed under a clearly erroneous standard.") (citation omitted).[3]

On appeal, Zavecz argues that she was entitled to the $9,578 the District Court failed to include in its original attorney fee award and refused to reconsider. YDI counters (1) that the District Court should have applied Pennsylvania law under which Zavecz would not be entitled to attorneys' fees and (2) that, even if California law applies, Zavecz would not be entitled to attorneys' fees incurred in defending breach of

---

[3] YDI argues that Zavecz appeals only the District Court's denial of her motion for reconsideration in order to invoke an standard of review it seems to believe is more favorable. We interpret Zavecz's notice of appeal as challenging both orders. *See, e.g., Alston v. Parker*, 363 F.3d 229, 232 (3d Cir. 2004). Regardless, our standard of review would not change. *See Max's Seafood Café ex rel. Lon-Ann, Inc. v. Quinteros*, 176 F.3d 669, 673 (3d Cir. 1999) ("We generally review the District Court's denial of reconsideration for abuse of discretion. However, to the extent that the denial of reconsideration is predicated on an issue of law, such an issue is reviewed *de novo;* to the extent that the District Court's disposition of the reconsideration motion is based upon a factual finding, it is reviewed for clear error.") (citation omitted).

contract claims under contractual fee-shifting provisions where those claims are dismissed pursuant to settlement. While we agree with Zavecz and the District Court that California law applies, we also agree with YDI that, under California law, Zavecz would not be entitled to the fees she now seeks. Thus, the District Court's discretionary decisions to refuse fees and to refuse reconsideration of its award were not predicated on any legal error and we perceive no other abuse of discretion.[4]

YDI argues that the District Court erred by applying California law. YDI further insists that, under Pennsylvania law, a contractual provision awarding attorneys' fees to a "prevailing party" does not apply where parties reach stipulated settlements. *See Profit Wize Marketing v. Wiest*, 812 A.2d 1270, 1275-76 (Pa. Super. Ct. 2002) ("While this

---

[4] In its original order awarding attorneys' fees, the District Court characterized the fees sought in relation to preparing to defend Zavecz against YDI's counterclaim as fees for a California attorney. *See* App. at 5. This left unclear whether the District Court's refusal to award fees was based on a factual misunderstanding about this category of fees. The record clearly reflects that Zavecz sought separate fees for expenses preparing her defense incurred by both a California attorney and her Pennsylvania attorney. The two attorneys submitted separate bills for these costs.

We are convinced, however, that the District Court's refusal to award these fees was not based on any clearly erroneous factual finding. Even though the District Court did not issue an opinion when it denied the motion to reconsider, Zavecz's motion fully clarified any factual misunderstanding the District Court may have had regarding the source of those fees.

Instead, we believe that the District Court's refusal to award fees rested on the legal question about Zavecz's entitlement to these fees under California law – a question, as we noted, we review *de novo*. *See Kiareldeen v. Ashcroft*, 273 F.3d 542, 545 (3d Cir. 2001) ("This court will . . . review an award of attorneys' fees *de novo* insofar as it rests on conclusions of law."); *Max's Seafood Café*, 176 F.3d at 673 ("[T]o the extent that the denial of reconsideration is predicated on an issue of law, such an issue is reviewed *de novo*."). No other predicate for an abuse of discretion is argued here.

definition [of "prevailing party"] encompasses those situations where a party receives less relief than was sought or even nominal relief, its application is still limited to those circumstances where the fact finder declares a winner and the court enters judgment in that party's favor. Such a pronouncement does not accompany a compromise or settlement."). Zavecz does not argue that Pennsylvania law would afford her the fees she seeks. Instead, she argues that the District Court correctly determined that a Pennsylvania court applying that state's choice-of-law rules would give effect to the contractual choice-of-law provision in the Asset Purchase Agreement and would apply California law to her claim for attorneys' fees.[5]

We believe that the District Court properly applied Pennsylvania choice-of-law rules to determine that California law would govern the award of attorneys' fees under the parties' contractual fee-shifting provision. Zavecz was seeking attorneys' fees based on the Asset Purchase Agreement's guarantee that the "prevailing party shall recover from the losing party reasonable attorneys' fees and costs and expenses" for "any Action . . . commenced by either party concerning this agreement." App. at 45-46. That agreement

---

[5] We should note that "[i]n Pennsylvania, choice of law analysis first entails a determination of whether the laws of the competing states actually differ" and "[i]f not, no further analysis is necessary." *Highmark, Inc. v. Hosp. Serv. Ass'n of Ne. Pa.*, 785 A.2d 93, 97 (Pa. Super. Ct. 2001). In this case, it is clear that California's statutory framework for attorney fee recovery under contractual fee-shifting provisions differs from Pennsylvania's approach – thus necessitating our analysis. *Compare* Kevin P. Allen, *Contractual Fee-Shifting Clauses – How to Determine "Prevailing Party" Status*, 74 Pa. B. Ass'n Q. 178 (2003) (describing Pennsylvania law) *with Santisas v. Goodin*, 951 P.2d 399 (Cal. 1998) (describing California law).

also states that "any Action arising out of or relating to this Agreement shall be governed by the Laws of the state of California." App. at 45. "In contract disputes, Pennsylvania courts generally honor the parties' choice of law provisions." *Nationwide Mut. Ins. Co. v. West*, 807 A.2d 916, 920 (Pa. Super. Ct. 2002).

YDI does not dispute the interpretation of the choice-of-law provision in the contract or that Pennsylvania generally gives effect to such provisions. Instead, it argues that Pennsylvania courts will refuse to honor contractual choice-of-law provisions if the law chosen has no reasonable relationship to the parties or the transaction. In YDI's view, the conclusion that the parties have no reasonable relationship to California is necessitated by various statements made by Zavecz when she was arguing that Pennsylvania law should govern other issues in this case and by the District Court's conclusion that Pennsylvania law should govern Zavecz's conversion claim. In reaching this conclusion regarding the conversion claims, YDI points out that the District Court specified the numerous Pennsylvania contacts with the case and noted that "Zavecz . . . has no significant relationship with California." App. at 252.

Applying Pennsylvania's choice-of-law rules, we have recognized that "[b]ecause choice of law analysis is issue-specific, different states' laws may apply to different issues in a single case, a principle known as 'depecage.'" *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006). *See also Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805 (Pa. 1964) (adopting Pennsylvania's "flexible" choice-of-law approach and

9

instructing courts to perform an "analysis of the policies and interests underlying *the particular issue* before the court") (emphasis added). We have found that "to properly apply the Second Restatement and remain true to the spirit of Pennsylvania's 'flexible approach,' we must first characterize the particular issue before the court as one of tort, contract, or corporate law – or some hybrid – in order to settle on a given section of the Restatement for guidance." *Berg Chilling*, 435 F.3d at 463.

It follows from the principle of depecage that a court's application of one state's law to one issue in a case does not preclude the court from deciding that another state's law governs another issue in the same case. In this case, the District Court applied Pennsylvania law to Zavecz's conversion claims after analyzing the case in accordance with the Restatement (Second) of Conflicts of Laws § 145 used by Pennsylvania courts in tort disputes. *See, e.g., Troxel v. A.I. duPont Inst.*, 636 A.2d 1179, 1180-81 (Pa. Super. Ct. 1994). When Zavecz moved for attorney fees under the contract, the District Court turned to § 187 and § 188 of the Restatement (Second) of Conflicts of Laws employed by Pennsylvania courts in contract disputes. *See, e.g., Smith v. Commonwealth Nat'l Bank*, 557 A.2d 775, 777 (Pa. Super. Ct. 1989); *Chestnut v. Pediatric Homecare of Am., Inc.*, 617 A.2d 347, 350-51 (Pa. Super. Ct. 1992). The fact that the District Court applied a different analysis and reached a different result for the contractual issue and the tort issue raised in the case is in accordance with Pennsylvania's choice-of-law rules. *See Berg Chilling*, 435 F.3d at 463. The District Court was not precluded from finding that

10

California law applied to the attorney fee issue by having previously chosen Pennsylvania law in the same case.

Nor was Zavecz estopped from invoking California law. It also follows from the idea of depecage that a litigant in a single case can invoke different states' laws to govern different issues in the case without fear of estoppel. In fact, in the parties' dispute about whether Pennsylvania or California law governed Zavecz's conversion claim, YDI advocated California law on the basis the choice-of-law provision in the Asset Purchase Agreement that it now argues should not be honored. Both sides have switched choice-of-law positions and neither were estopped from doing so.

YDI points to the language used by the District Court when it concluded that Pennsylvania law applied to Zavecz's conversion claim – that Zavecz had "no significant relationship with California" – to argue that this necessitates a finding that the parties do not have enough of a relationship with the state to validly designate that law to govern their contract disputes. But its logic is flawed. The District Court was applying the standard from § 145, not § 187, of the Restatement (Second) of Conflicts of Laws when it made the "no significant relationship" finding. Section 145(1) instructs courts for tort issues to apply the law of "the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Section 187(2)(a) – governing contractual choice-of-law provisions – instructs courts to honor the "law of the state chosen by the parties" regarding issues that could not have

11

been resolved by the contract unless "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice." The "no substantial relationship . . . and no other reasonable basis" test of § 187 of the Restatement is more permissive than the "most significant relationship" test under § 145 of the Restatement. This is precisely because courts may select only one of the competing states' laws to govern tort issues presented while, under § 187(2), contracting parties may have enough of a relationship with two states (or more) – for example, with both Pennsylvania and California – that they may designate the law of either state to govern future disputes.

Furthermore, the commentary to the Restatement makes clear that the standard of § 187 is a minimal standard:

> Requirement of reasonable basis for parties' choice. The forum will not apply the chosen law to determine issues . . . if the parties had no reasonable basis for choosing this law. The forum will not, for example, apply a foreign law which has been chosen by the parties in the spirit of adventure or to provide mental exercise for the judge. Situations of this sort do not arise in practice. Contracts are entered into for serious purposes and rarely, if ever, will the parties choose a law without good reason for doing so. When the state of the chosen law has some substantial relationship to the parties or the contract, the parties will be held to have had a reasonable basis for their choice. This will be the case, for example, when this state is that where performance by one of the parties is to take place or where one of the parties is domiciled or has his principal place of business.

Restatement (Second) Conflicts of Laws § 187, cmt. f. One of the parties to the contract – YDI – is a California corporation. Thus, the contracting parties had a reasonable basis for choosing California law. YDI's contention that the choice-of-law provision in this

12

contract is invalid in incorrect.

Under California law, however, we agree with YDI that Zavecz is not entitled to the fees she seeks: fees defending a counterclaim that was dismissed pursuant to a settlement. Zavecz's precise request is for attorney fees she incurred defending against a breach of contract counterclaim that was dismissed pursuant to settlement. Both parties cite and discuss *Jackson v. Homeowners Assoc. Monte Vista Estates-East*, 113 Cal. Rptr. 2d 363 (Cal. Ct. App. 2001) on this question. *Jackson*, it seems, is the tip of a giant iceberg of California law on contractual fee-shifting provisions.

The Supreme Court of California has observed that the California law governing the award of attorneys' fees under contractual fee-shifting provisions involves both "the language of the contractual provision" as well as "the complex interaction of several statutes that affect a party's contractual right to attorney's fees." *Scott Co. of Cal. v. Blount, Inc.*, 979 P.2d 974, 975 (Cal. 1999). Under the California Civil Code, "[e]xcept as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." *See* Cal. Civ. Code § 1032(b). Those costs include attorneys' fees authorized by contract, statute or law. Cal. Civ. Code § 1032(a)(10). Section 1717 of the California Civil Code provides:

> (a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. . . . Attorney's fees

13

provided for by this section shall not be subject to waiver by the parties to any contract which is entered into after the effective date of this section. Any provision in any such contract which provides for a waiver of attorney's fees is void.

> (b)  (1) The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section, whether or not the suit proceeds to final judgment. Except as provided in paragraph (2), the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract. The court may also determine that there is no party prevailing on the contract for purposes of this section.
>
> (2) *Where an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section.*

Cal. Civ. Code §1717(a), (b) (emphasis added).

YDI argues that the plain language of §1717(b)(2) precludes an award of attorneys' fees incurred in defending a contact action that was voluntarily dismissed pursuant to a settlement. We agree, but not because that provision is "free from ambiguity," "clear on its face," and a "model of clarity and simplicity" as YDI contends. *See* Br. Appellee at 20. The plain language of §1717(b)(2) declaring that there is no prevailing party "for purposes of this section" does not indicate whether this provision is the *exclusive* vehicle by which a party may recover attorneys' fees or whether a party not prevailing under § 1717(b)(2) might, in the alternative, seek attorneys' fees under contract law. The plain language of this statute does not answer whether § 1717(b)(2) is a default, waivable provision, or whether it is mandatory.

The Supreme Court of California, however, has answered that question. In 1998,

14

the Court considered a claim for attorneys' fees expended defending against a claim brought by aggrieved buyers of real estate that was eventually voluntarily dismissed. *Santisas v. Goodin*, 951 P.2d 399, 402 (Cal. 1998). The Court observed that, while § 1717 was originally enacted to ensure "mutuality of remedy for attorney fee claims under contractual attorney fee provisions," amendments made in 1981, including the addition of subdivision (b)(2), meant that "Section 1717 applies to contracts containing reciprocal as well as unilateral attorney fee provisions." *Id.* at 409. The Supreme Court specifically rejected the argument that § 1717 merely offered an alternative to traditional contract law as a source of authority to recover attorneys' fees:

> [D]efendants argue that . . . [§1717] operates only to *permit* recovery of attorney fees that would not otherwise be recoverable as a matter of contract law and never to *bar* recovery of attorney fees that would otherwise be recoverable as a matter of contract law. We reject this construction . . . [*inter alia*, as inconsistent with legislative history of amending §1717 reflecting] legislative intent to establish uniform treatment of fee recoveries in actions on contracts containing attorney fee provisions and to eliminate distinctions based on whether recovery was authorized by statute or by contract. . . . [The language of § 1717(b)(2)] should be construed as barring recovery of attorney fees in pretrial dismissal cases whether those fees are sought on the basis of the contractual provision or under Section 1717.

*Id.* at 410. The *Santisas* Court concluded:

> [W]e construe subdivision (b)(2) of section 1717 . . . as overriding or nullifying conflicting contractual provisions, such as provisions expressly allowing recovery of attorney fees in the event of voluntary dismissal or defining 'prevailing party' as including parties in whose favor a dismissal has been entered. When a plaintiff files a complaint containing causes of action within the scope of section 1717 (that is, causes of action sounding in contract . . . ), and the plaintiff thereafter voluntarily dismisses the action, section 1717 bars the defendant from recovering attorney fees incurred in

15

defending those causes of action, even though the contract on its own terms authorizes recovery of those fees.

*Santisas*, 951 P.2d at 411.[6] While one justice wrote separately to urge "legislative reconsideration" of the issue presented, the *Santisas* opinion was an opinion joined by a majority of the Court. *Id.* at 414-15 (Mosk, J., concurring).[7] Since this decision, the Supreme Court has reminded that the effect of the 1981 amendments to the Civil Code was that "attorney's fees [are] to be seen as allowed by statute, rather than by contract" in

---

[6] The *Santisas* Court went on to decide that attorneys' fees incurred pursuing *non-contractual* claims were not barred by §1717(b)(2). *See Santisas*, 951 P.2d at 409. The Court found that the language of § 1717(b)(2) referred only to claims made "on the contract" and "to enforce that contract." *Id.* The Court instructed that "[i]f an action asserts both contract and tort or other noncontract claims, section 1717 applies only to attorney fees incurred to litigate the contract claims." *Id.* This is significant for an issue not raised by YDI on this appeal. Zavecz would, under this reasoning, not have been barred by §1717(b)(2) from recovering attorneys' fees incurred pursuing her conversion claims since those fees were incurred pursuing tort claims. By contrast, the fees at issue on this appeal were incurred defending against a breach of contract counterclaim.

[7] Three of the seven justices dissented on this point, arguing that Section 1717 only applied to make unilateral contractual fee-shifting provisions reciprocal. *Santisas*, 951 P.2d at 417 (Baxter, J., dissenting). They concluded that:

> [W]hen a party relies upon Section 1717 to establish a reciprocal right to attorney fees, the restriction set forth in subdivision (b)(2) will preclude recovery if the action has been voluntarily dismissed prior to trial. Conversely, when the contract itself establishes mutuality of remedy for all parties to an action on the contract, the restriction has no application and the 'measure and mode of compensation of attorneys . . . is left to the agreement . . . of the parties.'

*Id.* (citing Cal. Civ. Proc. Code § 1021). This view was not controlling. *See id.* at 415 (Mosk, J., concurring) ("I am persuaded that Civ. Code. section 1717 applies without regard to whether the attorney fee provision is drafted as a nonreciprocal or reciprocal agreement.").

California.  *PLCM Group v. Drexler*, 997 P.2d 511, 515 (Cal. 2000) (quoting *Sears v. Baccaglio*, 70 Cal. Rptr. 2d 769, 775 (Cal. Ct. App. 1998)).  Intermediate appellate courts have consistently applied *Santisas* to refuse to honor attempts to waive or avoid § 1717(b)(2)'s prohibition on attorneys' fees for settled contract claims through contractual provisions.  *See, e.g.*, *Exxess Electronixx v. Heger Realty Corp.*, 75 Cal. Rptr.2d 376, 382-83 (Cal. Ct. App. 1998) ("We realize that . . . the lease contemplated an award of attorneys' fees . . . [for claims] dismissed as a result of a settlement.  Nevertheless, the definition of 'prevailing party' in Civil Code section 1717 is mandatory and cannot be altered or avoided by contract.  Contractual provisions that conflict with the 'prevailing party' definition under section 1717 are void.") (citation omitted); *Del Cerro Mobile Estates v. Proffer*, 105 Cal. Rptr. 2d 5, 7-8 (Cal. Ct. App. 2001) (finding *Santisas* to bar fees incurred related to contractual claims, despite language of the fee-shifting clause declaring that "a party shall be deemed a prevailing party if the judgment is rendered in his favor or where the litigation is dismissed in his favor prior to or during the trial, unless the parties otherwise agree in the settlement or compromise").

Given this understanding of § 1717(b)(2), Zavecz is not entitled to the attorneys' fees she seeks in this appeal under California law.  Zavecz is seeking attorneys' fees incurred defending against YDI's counterclaim for breach of contract – an "action on a contract" – under a contractual fee-shifting provision where this counterclaim was "voluntarily dismissed . . . pursuant to a settlement of the case."  Under § 1717(b)(2) of

17

the California Civil Code – the exclusive, mandatory, non-waivable, statutory vehicle for such awards for contract claims according to the Supreme Court of California – "there shall be no prevailing party" for the purposes of that claim.

Zavecz argues that an opinion of an intermediate appellate court, *Jackson v. Homeowners Assoc. Monte Vista Estates-East*, 113 Cal. Rptr. 2d 363 (Cal. Ct. App. 2001), opens up an exception to this general rule under California law. In *Jackson*, plaintiff homeowners brought an action to challenge certain covenants and restrictions adopted by the defendant homeowners' association. *Id.* at 364-65. After plaintiffs succeeded on appeal, the parties reached a settlement. *Id.* at 365. However, because the parties were unable to agree on the issue of attorneys' fees, the parties expressly provided in the settlement agreement that the trial court would determine the attorneys' fees issue before they dismissed their claims. *Id.* at 366. The *Jackson* Court held that "the parties could validly waive Section 1717, subdivision (b)(2) in order to submit the question to the trial court for resolution." *Id.* at 368. *Jackson* attempted to distinguish *Santisas*:

> [I]t is, of course, true that *Santisas* concludes that 'in voluntary pretrial dismissal cases . . . § 1717 bars recovery of attorney fees incurred in defending contract claims . . .' But this is not a voluntary pretrial dismissal case. Although the same principle would apply to a case in which the action was voluntarily dismissed pursuant to a settlement, the parties here contemplated that the case would not be dismissed until *after* the trial court had determined the attorney fees issue. The principles applicable to dismissal after settlement are therefore inapplicable to the situation here.

*Id.* at 370. The *Jackson* Court distinguished other cases that had reiterated the holding of *Santisas* by finding that in the case it considered "there was no dismissal *before* the

18

determination of the attorney fee issue." *Jackson*, 113 Cal. Rptr. 2d at 371.

Zavecz would have us find that the parties in this case, like the parties in *Jackson*, expressly reserved the issue of attorneys' fees in their settlement agreement. Zavecz argues that YDI "waived" its right to invoke § 1717(b)(2) just as the homeowners' association did in *Jackson*. YDI argues that *Jackson* did not hold that the parties waived § 1717(b)(2) but rather that the section was found inapplicable on the facts of that case because the parties had not yet voluntarily dismissed their claims when the Court considered the fee request.

If we interpret the Court in *Jackson* as holding that parties may "waive" their right to invoke § 1717(b)(2),[8] we face two issues: (1) whether the Supreme Court of California would follow *Jackson* to find that § 1717(b)(2) may be waived and (2) if so, whether YDI and Zavecz would be considered to have waived it.

In applying state law in a diversity case, our task is one of predicting how the highest court of the state would apply the law. *Paolella v. Browning-Ferris, Inc.*, 158 F.3d 183, 189 (3d Cir. 1998) ("When the state's highest court has not addressed the precise question presented, a federal court must predict how the state's highest court would resolve the issue."). We have found that *Vandemark v. Owens-Illinois Glass Co.*,

---

[8] YDI's interpretation of that decision conflicts with the plain language of that decision, where the court states: "[W]e find that the parties could validly waive Section 1717, subdivision (b)(2) in order to submit the question to the trial court for resolution." *Jackson*, 113 Cal. Rptr. 2d at 368. We find it difficult to interpret this decision differently.

311 U.S. 538 (1941), requires us "to apply the current, definitive statement of [state] law" by the highest court in that state. *Bouton v. BMW of N. Am., Inc.*, 29 F.3d 103, 110 (3d Cir. 1994). "Absent a definitive statement of the applicable law by the state's highest court, a district court may also consider the decisions of state intermediate appellate courts in order to facilitate its prediction." *Paolella*, 158 F.3d at 189. In making that prediction, "we must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Covington v. Cont'l Gen. Tire, Inc.*, 381 F.3d 216, 218 (3d Cir. 2004). However, "[t]he decision of an intermediate state court is . . . not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.*

On the question of whether § 1717 (b)(2) may be waived by the parties, we find it difficult to conclude that we lack the kind of "definitive statement of the applicable law by the state's highest court" that would cause us to look to intermediate courts for guidance as to the status of this issue. The Supreme Court of California in *Santisas* specifically found that litigants' rights to attorneys' fees are statutory and mandatory and interpreted § 1717(b)(2)'s bar on attorneys' fees for settled contract claims "as overriding or nullifying conflicting contractual provisions." *See Santisas*, 951 P.2d at 411. While *Jackson* found that this decision did not control the case before it, we cannot conclude that the California Supreme Court would follow this decision were it to decide Zavecz's

20

case.  While the Supreme Court has neither overruled nor approved of *Jackson*, no other published case has followed *Jackson* to find § 1717(b)(2) waivable.  One secondary source has characterized the case as an outlier.  *See* 1 Charles Crompton et al., *MB Practice Guide: California Contract Litigation* § 12.06 (citing *Jackson* to describe that "despite the ruling in *Santisas*, courts apparently still construe CC § 1717 to allow parties broad latitude in making attorney's fee arrangements").  All of this – but most importantly the opinion of *Santisas* itself – convinces us to apply the law as it has been enunciated so far by the highest court in California.

But even if we were to find that *Jackson* did create an exception to the rule in *Santisas*, we cannot conclude that Zavecz would satisfy it.  *Jackson* created a specific order that the parties needed to follow in order to avoid the effect of § 1717(b)(2).  The *Jackson* Court found that the settling parties had come to mutual agreement on all but one issue:

> The parties were not able to agree on the issue of attorney fees.
> Accordingly, the settlement agreement provides:  "The Parties have agreed
> to reserve the issue of any award of costs and attorneys fees to Plaintiffs, as
> requested by Plaintiffs in their respective Complaints, for consideration by
> this Court upon Plaintiffs filing the necessary Motion and/or Memorandum
> of Costs with the Court." Although not clearly reflected in the settlement
> agreement, the parties also agreed on the record that the action would not be
> dismissed until the trial court had resolved the attorney fee issue.

*Jackson*, 113 Cal. Rptr. 2d at 365-66.  Thus, the Court was able to conclude that, although §1717(b)(2) would bar attorneys' fees for contract claims dismissed pre-trial and "[a]lthough the same principle would apply to a case in which the action was voluntarily

21

dismissed pursuant to a settlement, the parties here contemplated that the case would not be dismissed until *after* the trial court had determined the attorney fees issue." *Id.* at 370. In the view of the *Jackson* Court, this specific order of conduct undertaken by the parties – coming to an agreement about all outstanding issues, expressly reserving one final issue (attorneys' fees) for consideration by a court in a written agreement, agreeing to wait to dismiss their claims until that final issue was resolved, and seeking fees without dismissing their claims – indicated that the settlement was not final when the trial court determined the attorneys' fees question. This allowed the *Jackson* Court to find that the parties had "waived" §1717(b)(2)'s protection by submitting the issue to the court to resolve.

The conduct of the parties in this case – YDI and Zavecz – does not indicate that their settlement remained unfinalized and contingent upon the final issue being resolved when the attorneys' fees issue was considered by the District Court. On November 19, 2004, YDI and Zavecz executed a written settlement agreement. Though they reserved the right to "file a motion" for attorneys' fees, each party agreed to dismiss its claims with prejudice:

> 2.    Upon receipt of [the contested] Share Certificates, [Zavecz] will terminate and discontinue with prejudice [Zavecz's] claims for conversion . . . ; **provided, however,** this termination is without prejudice to [Zavecz's] right to file a motion seeking attorneys fees and costs – that right being expressly reserved under this settlement –, which Motion [YDI] may oppose.

> 3.    [YDI's] counterclaim shall be terminated with prejudice; this

22

> termination is without prejudice to [YDI's] right to file a motion seeking attorneys fees and costs – that right being expressly reserved under this settlement –, which Motion [Zavecz] may oppose.

App. at 66-67. YDI delivered the disputed shares to Zavecz on or about November 22, 2004. The parties jointly filed this stipulated settlement with the District Court on December 13, 2004. After it was filed, Zavecz moved to collect attorneys' fees under the Asset Purchase Agreement. This conduct does not evince that the parties sought to reserve the issue and submit it to the District Court before finalizing their settlement. We believe that the parties reached a final settlement, after which Zavecz sought attorneys' fees. Essentially, we do not believe that YDI "waived" the statutory bar to attorneys' fees for settled contract claims in § 1717(b)(2) as the homeowners' association did in *Jackson*.[9] Thus, even if *Jackson* can be said to create an exception to the rule that parties may not "prevail" and receive attorneys' fees for contract claims dismissed pursuant to settlement – a rule codified in the California Civil Code and explicated by the highest state court in California – we cannot find that these parties would be found to have

---

[9] The parties vigorously dispute whether the parties' claims were dismissed when the Court made its attorneys' fees determination – a question that turns on whether the parties' claims were dismissed when the joint stipulation was filed on December 13, 2004, *see* Fed. R. Civ. P. 41(a)(1) ("[A]n action may be dismissed by the plaintiff without order of court . . . by filing a stipulation of dismissal signed by all parties who have appeared in the action."), or whether they were dismissed when the Court entered the order approving the settlement and dismissing the claims on April 12, 2005. We find it unnecessary to resolve this dispute. All indications from the conduct of these two parties were that the settlement agreement was final and not contingent on any remaining unresolved issues when the District Court considered the attorneys' fee award.

23

avoided that rule in accordance with *Jackson*.[10]

In sum, we conclude that the District Court properly applied Pennsylvania choice-of-law rules to determine that California law would govern the award of attorneys' fees under the fee-shifting provision in this agreement. We find that California statutory law, as interpreted by the highest court in that state, bars awards of attorneys' fees for contractual claims dismissed pursuant to settlements. We hold that the California Supreme Court would apply that rule to bar the attorneys' fees at issue in this appeal. Even if we found that the intermediate appellate court's decision that this statutory right could be waived or avoided by parties if they expressly reserve the issue for a court to decide, these two parties did not follow the procedure outlined in that case. We see no abuse of discretion in the District Court's refusal to award any attorneys' fees incurred defending Zavecz against YDI's breach of contract counterclaim that was eventually dismissed pursuant to settlement. We will affirm the order of the District Court.

---

[10] YDI also argues that, even if Zavecz would be considered to be the "prevailing party," the District Court is given broad discretion by § 1717(b)(1) to refuse attorneys' fees even to a prevailing party. As we find no abuse of discretion by the District Court's refusal to consider Zavecz a prevailing party for purposes of the contract claim dismissed pursuant to settlement, we have no occasion to decide whether an order without opinion would satisfy § 1717(b)(1)'s instruction that the trial court "shall determine who is the party prevailing on the contract for purposes of this section." *See* Cal. Civ. Code § 1717(b)(1).